**James W. SMYTH, Appellant–Plaintiff,**

v.

**Judy G. HESTER and the Estate of Timothy P. Brazill, Brian J. Zaiger, as Personal Representative, Appellees–Defendants,**

**Plews Shadley Racher & Braun LLP, Appellant–Intervenor.**

**No. 29A02–0803–CV–237.**

Court of Appeals of Indiana.

Feb. 12, 2009.

Rehearing Denied April 9, 2009.

---

William E. Wendling, Jr., Campbell Kyle Proffitt LLP, Carmel, IN, Attorney for Appellant.

Judy G. Hester, Brazill Hester, P.C., Indianapolis, IN, Attorney for Appellee, Judy G. Hester, Pro Se.

Jeffrey C. McDermott, Matthew R. Strzynski, Krieg DeVault LLP, Carmel, IN, Attorneys for Appellee, Estate of Timothy P. Brazill.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The law firm of Plews Shadley Racher and Braun LLP ("PSRB"), as intervenor, appeals the trial court's order awarding attorney fees to the Estate of Timothy P. Brazill ("Estate") and to attorney Judy G. Hester ("Hester") for actions by PSRB on behalf of its client James W. Smyth.[1]

We reverse and remand.

---

1.  We heard oral argument on this matter on January 13, 2009. We commend counsel for

## ISSUE

Whether the trial court erred in its award of attorney fees.

## FACTS

Smyth, Brazill, and Hester practiced law together as Smyth Brazill Hester LLP ("SBH"). On January 8, 2006, Smyth advised Brazill and Hester that their partnership was over. On February 19, 2006, Brazill died. Smyth and Hester were unable to agree on the winding up of the partnership. Subsequently, Smyth retained PSRB as counsel to represent him.

On March 15, 2006, PSRB filed Smyth's verified complaint against Hester and the Estate. The complaint sought damages, an accounting, and the appointment of a receiver over SBH, based upon the alleged breach of fiduciary duties by Hester and the decedent Timothy P. Brazill.[2]

In response to Smyth's verified complaint, on May 17, 2006, the Estate filed its answer and counterclaim against Smyth— alleging breach of fiduciary duty and conversion, and requesting an accounting and declaratory judgment. Also on May 17, 2006, Hester filed her answer; a counterclaim against Smyth alleging breach of fiduciary duty, self-dealing, and conversion; and request for accounting.

On May 19, 2006, PSRB filed Smyth's verified notice of claim against the Estate in the Hamilton County Probate Division

and requested that the court impose a constructive trust on the Estate for his claims and for claims of SBH. On June 1, 2006, the Estate filed a motion to dismiss Smyth's complaint. The motion alluded to Smyth's May 19, 2006 claim against the Estate, the statutory scheme applicable, and argued the lack of subject matter jurisdiction as evidenced by the complaint. The motion included a request for attorney fees on behalf of the Estate for having to "needlessly expend Estate assets" to defend "against Smyth's frivolous, unreasonable, groundless, and statutorily prohibited Complaint." (App. 87).

On June 26, 2006, PSRB filed Smyth's answers to the counterclaims of the Estate and Hester; Smyth alleged that Brazill and Hester were contract attorneys and denied that they were partners of SBH,[3] but admitted that Smyth had terminated SBH on January 8, 2006. On August 3, 2006,[4] the trial court ordered the consolidation of Smyth's claim against the Estate with his May 17, 2006 complaint. The order also appointed a receiver for SBH and set "an evidentiary hearing on the terms of the agreement between Smyth, Hester, and Brazill for October 4, 2006." (App. 158).

On October 4, 2006, the trial court reset the "evidentiary hearing on the terms of the agreement between Smyth, Hester,

their able advocacy.

2. A specific allegation contained in the complaint (and frequently referenced throughout the course of the instant litigation) was that shortly before January 8, 2006, Brazill had received a $700,000 payment from an SBH client but had neither deposited that payment into an SBH account nor reported the client's payment to SBH.

3. Both counterclaims had asserted that SBH was a partnership of Smyth, Brazill, and Hester.

4. Although the order is dated August 3, 2006, it reflects the action at the June 21, 2006 pretrial conference. The order states that with respect to the ordered consolidation, Smyth agreed to dismiss his claim for damages against the Estate (but not his claims for an accounting and the appointment of a receiver, or his claims against Hester), and that the Estate's motion to dismiss for lack of subject matter jurisdiction was deemed moot due to the consolidation and Smyth's agreement to dismiss his damages claim.

and Brazill" for March 19, 2007, with a cut-off deadline of January 17th for any "motion to enlarge the scope of" that hearing. (App. 160). Subsequent to the deadline, on February 8, 2007, PSRB filed Smyth's motion for partial summary judgment regarding the terms of the SBH partnership. In response, on February 22, 2007, the Estate moved that the trial court deny and strike the motion for partial summary judgment as an "untimely" attempt to expand the scope of the hearing.[5] (Supp. App. 355). It also argued that Smyth's proffered designated evidence was inadmissible "due to the application of the Dead Man's Statute." *Id.* PSRB filed Smyth's response on March 1, 2007. On May 17, 2007, the trial court granted the Estate's motion to strike Smyth's motion for partial summary judgment, and (re)scheduled the evidentiary hearing "on the terms of the partnership" for July 2, 2007. (App. 164).

At the evidentiary hearing on July 2, 2007, the parties stipulated to the admission of a March 1, 2003, Memorandum of Understanding ("MOU") and a March 1, 2004 Agreement ("Agreement"). The trial court's order reflects that after testimony and evidence were presented,[6] the Estate and Hester moved for judgment on the evidence, which the trial court granted. The trial court directed the Estate to draft and present to the trial court proposed findings of fact and conclusions of law "on or before July 16, 2007," and directed the Estate to share such with PSRB "before presentation to the Court." (App. 168). The Estate tendered its proposed findings of fact and conclusions of law to the trial court on July 16, 2007.

On July 16, 2007, the Estate also filed a motion for attorney fees and costs against Smyth and PSRB for having "continued to litigate a frivolous, unreasonable, and groundless claim and . . . litigated in bad faith." (App. 170). The motion noted Smyth's "inconsistent sworn representations in his pleadings"; his "unwarranted and untimely motion[ ]" for partial summary judgment; alleged misrepresentations by PSRB at the July 2nd hearing; and Smyth's continued scheduling of depositions.

On August 15, 2007, PSRB filed a brief in support of Smyth's request that the trial court impose a constructive trust, with over 250 pages of attached exhibits. The Estate filed a motion in response, wherein it argued that both the "procedural history" and the brief demonstrated "Smyth's and his attorney's frivolous, unreasonable, and bad faith prosecution of this matter against the Estate"; moved to strike much of the material in the brief and attached exhibits as being precluded by the Dead Man's Statute and inadmissible confidential banking information;[7] and argued that imposition of a constructive trust over the Estate was not warranted. (App. 494). The Estate sought attorney fees and costs it had "incurred due to Smyth's and Smyth's attorneys' continued bad faith conduct in this matter." (App. 505). PSRB and Smyth responded, denying any frivolous claims.

---

5. Hester filed a motion to join the Estate's motion to strike Smyth's motion for partial summary judgment.

6. Both the Estate and Hester make assertions in their appellee briefs about what transpired at the July 2, 2007 hearing, and counsel also commented at the oral argument about what transpired at the hearing. (Estate's Br. at 3; Hester's Br. at 1–2). However, no transcript of the hearing was included in the twelve-volume record presented to this court. Hence, their assertions and comments are not supported by the record.

7. Hester subsequently filed a motion to join in the Estate's motion to strike.

Subsequently, on September 4, 2007, the trial court issued its findings of fact and conclusions of law regarding the *July 2nd* evidentiary hearing. The trial court found that "SBH operated under the terms" of the MOU, as modified by the Agreement, a "fact ... judicially admitted by Smyth in his Answer to the Estate's Counterclaim...." (App. 603). (Smyth's Answer had been filed June 6, 2006.) It also concluded that "Smyth, in violation of the terms of the MOU, terminated SBH on January 8, 2006." (App. 604).[8] In a separate September 4th order, the trial court ruled that the Estate's motion for attorney fees and costs would be heard on October 3, 2007.[9]

On September 28, 2007, PSRB filed Smyth's motion to correct error, asserting *inter alia* that there was no evidence to support the trial court's conclusion "that Smyth's termination of SBH was in violation of the MOU." (App. 922). The motion requested that the order be amended "by removing the phrase 'in violation of the terms of the MOU' so that [the] Conclusion of Law ... would read as follows: 'Smyth terminated SBH on January 8, 2006.'" *Id.*

Also on September 28, 2007, the trial court granted the Estate's motion to strike material submitted by Smyth, holding that it would not review any of the Smyth submissions as to imposition of a constructive trust. It further set an evidentiary hearing for October 3, 2007, on the issue of a constructive trust, and stated that the "issue of attorney fees" was "continued from the October 3, 2007 hearing and w[ould] be reset at a Status Conference with attorneys after the completion of such hearing." (App. 938). The trial court subsequently reset the scheduled October 3rd evidentiary hearing to October 30, 2007.

On October 29, 2007, the trial court ruled on the motion to correct error, that because "whether the thirty (30) day notice was properly given was not fully litigated at the hearing on July 2, 2007," its order of September 4, 2007, "should not have stated the termination of the partnership was 'in violation of the terms of the MOU.'" (App. 964). The trial court "corrected" the order to state simply that "Smyth terminated SBH on January 8, 2006." *Id.*

On October 30, 2007, the parties appeared for a hearing on the imposition of a constructive trust. The trial court noted the request by the Estate and Hester "that notice should be given to all parties," ordered that the hearing be continued for PSRB to provide notice "to all parties in all pending causes," and further found that "based on the statements of counsel[,] that ... Smyth is not proceeding in his personal capacity but as a partner and representative of" SBH. (App. 968, 970). A telephone status conference was set for November 27, 2007 to discuss the need for

---

8. In the meantime, on July 18, 2007, Smyth had filed an objection to the Estate's proposed findings and conclusions of law, asserting *inter alia* that whether Smyth "acted in violation of the MOU ... was not litigated at the hearing"; that "no evidence was presented" as to whether Smyth could "terminate the partnership as he did"; and that the finding of fact in that regard "should read simply, 'Smyth terminated SBH on January 8, 2006.'" (App. 176, 177). The Estate responded that it had presented the proposed findings of fact and conclusions of law to PSRB on July 12th, consistent with the trial court's order, received no comments therefrom; and tendered them to the trial court as ordered on July 16th. The Estate further asserted that PSRB's failure to express the objection "prior to the July 16, 2007 submission," required the Estate to incur additional attorney fees in this matter. (App. 180).

9. According to the CCS, on September 5, 2007, Hester filed a petition for attorney fees and costs; however, the petition is not included in the record.

an evidentiary hearing "concerning the allegations of whether Mr. Smyth ha[d] breached the terms of the MOU" and "whether to complete the hearing concerning the imposition of constructive trust, and the setting of a hearing concerning attorneys fees." *Id.*

At the telephonic conference, the trial court indicated that it would consider the constructive trust issue at a December 20, 2007 hearing. On December 18, 2007, the trial court confirmed the setting of an evidentiary hearing to consider whether Smyth could "proceed as partner and representative of [SBH] to request the imposition" of a constructive trust, and set the hearing for January 25, 2008. (App. 1074). An order dated December 20, 2007, clarified that a hearing would be held on January 16, 2008, to "determine if the partnership was improperly terminated by Mr. Smyth"; with the hearing on January 25, 2008 "concerning the remaining issues involving the imposition of a constructive trust"; and the "attorney fees hearing … reset for February 15, 2008." [10] (App. 1084).

On January 16, 2008, the trial court commenced the "hearing concerning whether or not the partnership was improperly terminated." (Tr. 4). Witnesses testified that in late 2005, the three SBH partners had participated in finalizing arrangements for SBH to be the preferred legal provider to the Eli Lilly Federal Credit Union, resulting in a three-year contract between SBH and the credit union effective December 20, 2005. An attorney formerly employed by SBH testified that on January 10, 2006, Smyth informed SBH employees that the partnership of SBH had been terminated, and they were no longer employees of SBH. Hester testified that Smyth first informed her by email on January 8, 2006, that the partnership was terminated,[11] and reaffirmed that fact in subsequent communications. Smyth attempted to testify, and the Estate objected—arguing that Smyth was not a competent witness under the Dead Man's Statute. After the trial court reviewed the statute and the authority provided "under the previous briefings that we've done," it held that Smyth's testimony was barred by the statute. (Tr. 124).[12] At the conclusion of the hearing on January 16, 2008, the trial court took the matter under advisement.

On January 24, 2008, the trial court issued its eleven-page findings of fact, conclusions of law, and judgment. It found that pursuant to the MOU, as modified by the Agreement, a term of the SBH partnership agreement was that "any partner had the right to terminate" the partnership "upon thirty (30) days written notice" to the other partners; that "Smyth dissolved SBH on January 8, 2006"—a "determination previously made at the re-

---

10. The Estate and Hester assert, and PSRB's brief appears to concede, that the February 15, 2008 hearing concerned estate administration fees.
   In fact, on February 13th, two days before the scheduled hearing, the trial court "clarifie[d]" the order in this respect to specify "that the 'Attorney Fee Hearing' set for February 15, 2008 will not hear any of the issues pending against James W. Smyth or his counsel for fees and costs. That matter will be separately set for hearing at a later time." (App. 1132).

11. An email from Smyth to Brazill and Hester, dated January 8, 2006, was admitted into evidence. Smyth stated therein that the email should be accepted "as formal notice that [the SBH] partnership is over." (Ex. 102).

12. There was no testimony or argument at the hearing concerning whether the representation of Smyth warranted the award of attorney fees to the Estate and Hester.

quest of and in favor of Smyth"; and that Smyth effected a "unilateral and immediate dissolution and termination of SBH." (App. 21, 22). The trial court concluded as a matter of law that Smyth "dissolved and terminated SBH" without complying with the partnership term requiring him to provide the other partners with thirty days prior written notice, and that "Smyth's dissolution and termination of SBH in violation of partnership terms was wrongful." (App. 24). The trial court further concluded that because Smyth wrongfully dissolved and terminated SBH, he could not proceed to direct or participate in the winding up of SBH.[13] The judgment not only denied Smyth's request for imposition of a constructive trust but

> DECREED that Smyth and his attorneys' actions at the January 16, 2008 hearing illustrate their frivolous, unreasonable, and bad faith conduct in this case, and the Estate is entitled to present evidence of the reasonable attorney's fees and costs it has incurred due to Smyth's and his attorneys' conduct in this matter.[14]

(App. 28).

On January 28, 2008, Jack Hittle filed an appearance as Smyth's counsel. On February 8, 2008, PSRB filed a motion to withdraw because Hittle had "taken over [Smyth]'s representation." (App. 1121). The trial court granted PSRB's motion to withdraw on February 13, 2008.

During a pretrial conference on February 15, 2008 at which PSRB was present, the Estate, Hester, and Smyth's new counsel sought "to conduct negotiations and/or mediation to settle all pending matters."

(App. 1135). The trial court then modified its order of January 24, 2008, to stay the provision concerning attorney fees and costs "until the parties have advised as to the outcome of such negotiations and/or mediation." (App. 1136).

Smyth, Hester, and the Estate arranged for mediation. On March 14, 2008, the trial court conducted a telephone conference regarding the upcoming mediation scheduled for March 20, 2008. The trial court was informed that PSRB did not plan to attend the mediation, which was later confirmed by PSRB when contacted by the court. The trial court then stated that it would "rescind" the stay such that the order would be "final with respect to the claim against" PSRB for attorney fees and costs, (Tr. 151, 152), and on March 19, 2008, issued its written order. PSRB moved to intervene and initiated this appeal.

### DECISION

■ Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Town of Georgetown v. Edwards Community Inc.*, 885 N.E.2d 722, 726 (Ind.Ct. App.2008). There is no assertion by the parties that the MOU or the Agreement contained a provision providing for the payment of attorney fees if the parties disagreed on how to wind up the partnership. Given the court's order referencing the "frivolous, unreasonable and bad faith conduct" of Smyth and his attorneys, (App. 28), the trial court appears to have award-

---

13. It appears undisputed that neither the MOU nor the Agreement contained any terms as to how to wind up the partnership upon termination.

14. The order was amended on February 11, 2008, to "clarify" that "both Hester and the Estate may present evidence of their reasonable attorney fees and costs incurred in defending against Smyth's and his attorneys' bad faith in this case." (App. 1120).

ed the fees pursuant to Indiana Code section 34–52–1–1, which authorizes "the award of attorney fees for litigating in bad faith or for pursuing frivolous, unreasonable or groundless claims." *Davidson v. Boone County,* 745 N.E.2d 895, 899 (Ind. Ct.App.2001).

■ Specifically, the statute provides, in relevant part, that the trial court

may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless, or

(3) litigated the action in bad faith.

Ind.Code § 34–52–1–1(b). Such a statutory award may be made "upon a finding" of any one of the statutory bases. *Davidson,* 745 N.E.2d at 895 (quoting *Kintzele v. Przybylinski,* 670 N.E.2d 101, 102 (Ind.Ct. App.1996)).

■ Appellate review of the trial court's award of attorney fees pursuant to Indiana Code section 34–52–1–1 proceeds in three steps. We first review the trial court's findings of fact under a clearly erroneous standard. *Davidson,* 745 N.E.2d at 899 (citing *Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111, 1115 (Ind.Ct.App.1999), *adopted in relevant part,* 718 N.E.2d 753 (Ind.1999)). In reviewing the findings of fact, we neither reweigh the evidence nor judge witness credibility, but rather we review only the evidence and reasonable inferences drawn therefrom that support the trial court's findings and decision. *Davidson,* 745 N.E.2d at 900 (citing *Kahn,* 533 N.E.2d at 164). In reviewing under the clearly erroneous standard, we will not reverse unless

we are left with a definite and firm conviction that a mistake has been made. *Id.*

■ The second step is to review de novo the trial court's legal conclusions. *Davidson,* 745 N.E.2d at 899 (citing *Emergency Physicians,* 714 N.E.2d at 1115). We have previously applied the following guidelines in our review of an attorney fee award pursuant to the statute. A claim is frivolous

(a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for the extension, modification, or reversal of existing law.

*Kopka, Landau & Pinkus v. Hansen,* 874 N.E.2d 1065, 1074 (Ind.Ct.App.2007) (quoting *Kahn v. Cundiff,* 533 N.E.2d 164, 170 (Ind.Ct.App.1989), *summarily aff'd by* 543 N.E.2d 627 (Ind.1989)). A claim is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. *Kopka* at 1075 (citing *Kahn* at 170–71). A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party. *Kopka* at 1075 (citing *Kahn* at 171). A claim or defense is *not,* however, groundless or frivolous merely because the party loses on the merits. *Northern Elec. Co., Inc. v. Torma,* 819 N.E.2d 417, 431 (Ind.Ct.App.2004) (citing *Kahn,* 533 N.E.2d at 171), *trans. denied.*

■ Finally, the statute "vests discretion in the trial court to award fees on finding one or more of the acts described in subsection (b)." *Mitchell v. Mitchell,* 695 N.E.2d 920, 925 (Ind.1998). Thus, the third step of our appellate review is "to

review the trial court's decision to award fees and the amount thereof under an abuse of discretion standard." *Davidson,* 745 N.E.2d at 899–900 (citing *Emergency Physicians,* 714 N.E.2d at 1115).

■ PSRB first argues that the trial court's award of attorney fees cannot stand against it because the order contains no findings of fact to support the judgment that PSRB's representation of Smyth was frivolous, unreasonable, and in bad faith. In general, our review of the judgment leads us to agree. None of the findings of fact contain a specific reference to problematic litigation action, and none of the conclusions of law reflect the legal authority and standard for an award of attorney fees.

■ Nevertheless, Hester argues that three of the trial court's findings support the judgment awarding attorney's fees. First, she cites Finding, # 4, which reads as follows:

On January 1, 2005, Smyth, [Brazill], and Hester formed SBH. The Court ruled in its August 30, 2007 Order that SBH was a partnership and that Smyth, Brazill, and Hester were three partners in SBH.

(App. 20). According to Hester, "when taken in context with all reasonable inferences, including that Smyth and [PSRB] argued both sides of this issue at different times throughout the case," this finding supports the judgment "that Smyth and [PSRB] litigated this case in a frivolous, unreasonable, and bad faith manner." Hester's Br. at 10. However, it is well-settled that in our review of whether findings support the judgment, we may not add anything to the findings of fact by way of presumption, inference, or intendment. *Nance v. Miami Sand & Gravel, LLC,* 825 N.E.2d 826, 835 (Ind.Ct.App.2005), *trans. denied; see also Weiss v. Harper,* 803 N.E.2d 201, 205 (Ind.Ct.App.2003); *Doro-*

*thy Edwards Realtors, Inc. v. McAdams,* 525 N.E.2d 1248, 1256 (Ind.Ct.App.1988); *Sandoval v. Hamersley,* 419 N.E.2d 813, 816 (Ind.Ct.App.1981). Finding # 4 does not support a judgment that the representation by PSRB warranted an award of attorney's fees.

■ Next, Hester cites Finding # 9, which states as follows:

Smyth dissolved SBH on January 8, 2006. This fact was judicially admitted by Smyth in his Verified Complaint for Breach of Fiduciary Duty, Request for Accounting and Appointment of Receiver on March 15, 2006 at Paragraph 7. This fact was also judicially admitted by Hester in her May 17, 2006 Answer to Smyth's Verified Complaint at Paragraph 7.

(App. 21). Again, without the drawing of any inferences from the record with respect to the facts found in Finding # 9, it does not support an award of attorney fees against PSRB.

Finally, Hester asserts that "the Trial Court's intention," (Hester's Br. at 11) with respect to legal representation is reflected in Finding # 10. Finding # 10 is particularly lengthy, but its thrust is that pursuant to "law of the case doctrine," the trial court's previous determination that Smyth "terminated SBH on January 8, 2006 . . . prevent[ed] Smyth from" further contesting that determination. (App. 21). Hester argues that this is a finding that Smyth and PSRB improperly continued to argue "whether or not Smyth terminated SBH." Hester's Br. at 11. However, Finding # 10 does not state that the trial court found that Smyth and PSRB had continued to litigate that particular issue after it "clearly became frivolous, unreasonable, or groundless." I.C. § 34–52–1–1(b)(2). Therefore, we are unable to supply the inference in that regard.

The Estate does not appear to argue that the findings support the judgment; rather it argues that the *record* provides support for a judgment awarding attorney fees. The Estate first notes that Smyth's complaint alleged that SBH was a partnership, but in a subsequent pleadings, Smyth asserted that Brazill and Hester were contract attorneys and not partners—conflicting assertions that required a hearing to determine "the terms of the SBH partnership." Estate's Br. at 16. However, given the assertions in the pleadings of Hester and the Estate, and the record before us, it is clear that such an evidentiary hearing was necessary to determine the specific terms and conditions of the partnership regardless of any conflicting assertions by Smyth. Such an evidentiary hearing was a necessary predicate in order for the trial court to proceed with the ultimate issue of how to wind up the SBH partnership, in light of Brazill's death and the inability of Smyth and Hester to agree in that regard.

In support of its argument that the record supports the judgment, the Estate cites to the motion for partial summary judgment filed for Smyth by PSRB. The Estate asserts that the motion was untimely, founded on inadmissible evidence, and required the Estate to expend significant resources to defend against, including the filing of a motion to strike; and reminds us that the trial court granted the Estate's motion to strike. However, the trial court did not specifically grant the Estate's request for attorney fees in this regard, and the judgment contains no reference to the filing of the motion for partial summary judgment as the basis for an award of attorney fees.

The Estate further argues that evidence establishing that PSRB "*continued* to litigate issues after those issues clearly became frivolous, unreasonable or groundless" is shown by PSRB's argument at the January 16, 2008 hearing "that Smyth had never 'terminated' SBH, but had only 'dissolved' the partnership." Estate's Br. at 17 (emphasis in original). As the trial court's conclusions of law reflect, Indiana Code section 23–4–1–37 "provides that partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner has the right to wind up the partnership affairs." (App. 25). At the hearing on January 16, 2008, PSRB argued that even if Smyth had "wrongfully terminated because 30 days notice wasn't given," the issue remained "whether he has wrongfully dissolved the partnership," and according to PSRB, Smyth's termination of SBH was not a wrongful dissolution because "it could only be wrongful under the law if the partnership was for a stated purpose or for a specific term. And this partnership was neither of those things." (Tr. 128, 126, 127).

PSRB's argument did not prevail. The trial court concluded as a matter of law that when Smyth "wrongfully terminated SBH in violation of the partnership terms, Smyth also wrongfully dissolved SBH under the UPA." (App. 25). The fact that PSRB's legal argument to the trial court failed is not dispositive, however, inasmuch as a claim or defense is not groundless or frivolous merely because the party loses on the merits. *Northern Elec. Co., Inc.,* 819 N.E.2d at 431.

Citing *Davidson,* 745 N.E.2d at 900 (Ind.Ct.App.2001), both the Estate and Hester argue that the trial court has the authority to award attorney fees under the statute *sua sponte.* Indeed, *Davidson* affirmed the trial court's authority to act *sua sponte* in awarding attorney fees in that case. In *Davidson,* however, the trial court provided *extensive* findings explaining how the Davidsons' evidence had failed to establish any of their many claims (dis-

parate treatment, negligence, malicious abuse of power, inverse condemnation, violation of 42 U.S.C.1983, deprivation of property without due process); and why it found that their bringing the action was an unreasonable claim, that the claim was groundless, and that the action was frivolous and brought "primarily for the purpose of harassing the defendants." 745 N.E.2d at 902–903. We have no such findings here for our review on appeal.

The Estate and Hester jointly argue that we should affirm because the trial court did not abuse its discretion when it awarded attorney fees under the statute. We acknowledge that the final step of our review is one applying the abuse of discretion standard. Moreover, inasmuch as the trial court's findings of fact and conclusions of law do not address the attorney fee award, we may consider that portion of the judgment to be a general judgment; and we may affirm a general judgment on any theory supported by the evidence. *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind.Ct.App.2006). That said, we are mindful of our Supreme Court's observation that "the legal process must invite, not inhibit, the presentation of new and creative argument to enable the law to grow and evolve"; and that in reviewing an award of statutory attorney fees, we "must leave breathing room for zealous advocacy and access to the court to vindicate rights," and "be sensitive to these consid-

erations and view claims of frivolous, unreasonable, or groundless claims or defenses with suspicion." *Mitchell v. Mitchell*, 695 N.E.2d 920, 925 (Ind.1998) (internal citations omitted).

We acknowledge that the record may include some questionable litigation tactics that might support the trial court's exercise of its discretion to award attorney fees. However, our review in that regard is impaired by the fact that the order appealed does not provide us with any insight as to the trial court's reason for the award of attorney fees in this case, *i.e.*, what the trial court found to be frivolous, unreasonable, and bad faith conduct. Accordingly, we remand to the trial court for further consideration and explanation of its judgment in that regard. *See Carmichael v. Siegel*, 754 N.E.2d 619, 638 (Ind.Ct.App. 2001).[15,16]

Reversed and remanded.

FRIEDLANDER, J., and BARNES, J., concur.

---

15. We find unpersuasive PSRB's argument that the order necessarily requires evidence of actions *at the January 16*, 2008 hearing that warranted an award of attorney fees. The order states that PSRB's actions there "illustrate[d]" such conduct; hence, the award might be supported by earlier conduct. (App. 28).

We also find unpersuasive PSRB's argument that the order must be reversed because it had no notice that an award could issue after the hearing. Multiple requests for such an award had been filed by the Estate and not yet been acted on. There is no argument that

PSRB was not served with notice of the requests. Therefore, PSRB was on notice that there could be a ruling thereon.

For similar reasons, we are not persuaded that the order must be reversed because the pretrial order did not expressly state that the trial court would consider the subject of an attorney fee award at the hearing.

16. Finding that the appellate arguments of PSRB are not without merit, we deny the requests by the Estate and Hester for appellate attorney fees.