**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**JOHNTHAN A. WATSON**
Wandling & Associates
South Bend, Indiana

ATTORNEY FOR APPELLEES:

**ROBERT W. MYSLIWIEC**
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEESHA DUENSING, ERICA BUZALSKI, KRISTI BUZALSKI, and RAY BUZALSKI, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1302-CC-69 |
| | ) | |
| WENDY JOHNSON and KRIS A. FRAZIER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D05-1207-PL-163

**October 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellants-Plaintiffs Aleesha Duensing, Erica Buzalski, Kristy Buzalski,[1] and Ray Buzalski (collectively, "the Buzalskis") appeal the trial court's grant of summary judgment in favor of Appellees-Defendants Wendy Johnson and Kris Frazier. The Buzalskis filed a complaint against Johnson and Frazier alleging defamation, defamation *per se*, false light, conspiracy to defame, and slander of title relating to a published statement that implicated the Buzalskis in prostitution, drugs, and gang activity. The Buzalskis argue that there is a genuine issue of material fact as to whether Johnson and Frazier made the alleged defamatory statement; there is a genuine issue as to the credibility Johnson's and Frazier's self-serving affidavits; and the trial court's grant of summary judgment prior to discovery was inappropriate. The Buzalskis also challenge the trial court's award of attorney's fees to Johnson and Frazier. In turn, Johnson and Frazier argue that they are entitled to an award of appellate attorney's fees. We affirm the judgment of the trial court, and deny Johnson and Frazier's request for appellate attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Ray owns a residential property located at 134 Monmoor Avenue in Mishawaka (the "Residence"). Ray's daughter Kristy lives in the Residence. From March 1, 2009 through July 31, 2010, the Mishawaka Police Department was called to the Residence on

---

[1] We presume this party is the same individual who is also referred to varyingly in the record as "Kristi Buzalski," "Kristy Kendall," and "Kristi Kendall."

twenty-five occasions,[2] eleven of which occurred during the first half of 2010. The reasons for these calls included the "firing of weapons, disorderly conduct, theft, burglary, forced entry into a residence, threats, and suspicious persons or vehicles." Appellees' Br. p. 3.

On April 15, 2009, local television station WNDU published an online news article headlined, "Mishawaka police investigate string of robberies on Monmoor Ave" ("Article 1"). Appellants' App. p. 31. The WNDU website summarized Article 1 as follows: "Police got a call of shots fired in the 100-block of Monmoor Avenue. Several other homes on the street were broken into as the suspects tried to run from police." Appellants' App. p. 31. The website also included an online comment section for readers of Article 1. It was there that, on April 16, 2009, a reader identified only as "Kris" ("Reader Kris") commented:

> That house, it's [sic] occupants and visitors, have been a thorn in everyone [sic] side who lives on that street for over a year! There was a drive by [sic] shooting a few months ago…the bullet holes are still in the front of the house. We can't even sit on our porches or walk down the street without getting harassed by these thugs.

Appellants' App. p. 31 (ellipses in original).

Following another shooting in July of 2010, WNDU reporters interviewed several neighbors to the Residence, including Johnson and Frazier, regarding the Residence's

---

[2] Appellants' Appendix does not contain the "listing" of these calls, which Johnson and Frazier filed in support of their motion for summary judgment and referenced in their supporting affidavits. Appellants' App. p. 21, 23. Indiana Appellate Rule 50(A)(2)(f) and its applicable case law "clearly indicate that when appealing the grant or denial of a motion for summary judgment, the moving party must file with the appellate court those materials that were designated to the trial court for purposes of reviewing the motion for summary judgment." *Yoquelet v. Marshall Cnty.*, 811 N.E.2d 826, 829-30 (Ind. Ct. App. 2004).

troubled history. On July 25, 2010, WNDU published an online news article with the headline, "Mishawaka home pin-pointed for crime spree" ("Article 2"). Appellants' App. p. 29. Article 2 read as follows:

Residents along Monmoor Avenue in Mishawaka say they're living in fear. It started after a recent string of shootings and harassment plagued the once quiet street. Around 3 a.m. Saturday morning, criminals fired multiple shots once again, this time from the alleyway. Homeowners say all of these problems come from one home on the street, 134 Monmoor Avenue. Neighbors say prostitution, drugs and gang activity is running rampant in the home and they demand change.

"This street used to be nice and quiet, nice and peaceful. You could walk up and down the street," neighbor Wendy Johnson recalled about the first five years she lived along Monmoor Avenue. "I'm really just plain disgusted now, to tell you the truth. We're are kinda scared, but we are not going to let them take over our lives," Johnson added.

Earlier this year, 24-year-old Kristy Buzalski moved into 134 Monmoor Avenue. The home is owned by her father, retired 22-year-veteran Mishawka police officer Ray Buzalski. This year alone, police have responded to the home nearly a dozen times for shootings and disturbances.

"It is the neighbor nightmare. []I'm done; I'm flat done with these people," said a neighbor, who only wanted to be identified as Kris.

Neighbors have taken hundreds of digital pictures of people coming and going from the troubled home. They believe the individuals in the photos are local criminals and the cause for the increase of neighborhood crime.

"What's it going to take? Is it going to take a kid having to die? I sure hope not," neighbor Kris said emotionally.
…
"This is where I drew my line in the sand and said, we've had enough," Kris said about her mission to evict the tenants at 134 Monmoor.

While interviewing angered neighbors, Buzalski's father and mother came to defend their daughter and home.

"There is no drug activity or prostitution going on. It is all fabricated by the neighbors and the police department," Ray Buzalski said. "I don't

4

know who she has over on a daily basis. I hope that she'd have good enough judgment that she wouldn't let hardened criminals in her home," Buzalski added when questioned about the number of police calls to the home.

"Check the police reports, there's been 11 calls to this house this year alone. I don't know how he can deny that type of record," Johnson said about Buzalski supporting her daughter.

[WNDU reporters] spoke off-camera with Mishawaka Police who confirm the house does cause trouble. Buzalski said he plans to sell the home because of relentless neighborhood and police harassment against his family and daughter.

Appellants' App. p. 29-30.

On July 23, 2012, the Buzalskis filed a complaint against Johnson and Frazier, alleging defamation, defamation *per se*, false light, conspiracy to defame, and slander of title. Their allegations were based on the Article 2 statement, "Neighbors say prostitution, drugs and gang activity is running rampant in the home…." Appellants' App. p. 29. On August 27, 2012, Johnson and Frazier answered the complaint and moved for summary judgment. In support of their motion, Johnson and Frazier submitted self-serving affidavits acknowledging that they made the quoted statements in Article 2 but denying that they made the alleged defamatory statement. In their affidavits, Johnson and Frazier also stated that they observed WNDU reporters interview other neighbors in preparation for Article 2 and that they had not taken any photographs of the Residence or its residents.

The Buzalskis responded to Johnson and Frazier's motion for summary judgment, designating Reader Kris's Article 1 comment and Article 2 as evidence that Johnson and Frazier made the alleged defamatory statement. A hearing on the motion was held on

5

October 23, 2012, at which the Buzalskis failed to appear. Finding no genuine issue of material fact as to the Buzalskis' claims, the trial court granted summary judgment in favor of Johnson and Frazier on October 29, 2012.

On November 26, 2012, Johnson and Frazier moved for an award of attorney's fees. On November 28, 2012, the Buzalskis responded and also filed a motion to reconsider the grant of summary judgment in favor of Johnson and Frazier. Without notice to the Buzalskis, the trial court held a hearing on both pending motions on December 14, 2012. The Buzalskis failed to appear. Following the hearing, on December 18, 2012, the court awarded Johnson and Frazier attorney's fees and denied Appellants' motion to reconsider.

On December 27, 2012, the Buzalskis moved to vacate the trial court's December 18, 2012 order.[3] A hearing on the motion was held on January 17, 2013. After learning that the Buzalskis were not notified of the December 14, 2012 hearing, the court heard the Buzalskis' argument in opposition to Johnson and Frazier's motion for attorney's fees. Ultimately, the trial court denied the Buzalskis' motion to vacate and affirmed its December 18, 2012 order. On January 22, 2013, the Buzalskis filed a supplemental brief of law on its previously denied motion to reconsider. The trial court, however, again affirmed its December 18, 2012 order denying the Buzalski's motion to reconsider and awarding Johnson and Frazier attorney's fees.

## DISCUSSION AND DECISION

### I. Summary Judgment

---

[3] Appellants' Appendix also does not contain this document.

The Buzalskis challenge the trial court's denial of their motion to reconsider the court's grant of summary judgment in favor of Johnson and Frazier. We consider the Buzalskis' motion to reconsider as a motion to correct error. "[A]lthough substantially the same as a motion to reconsider, a motion requesting the court to revisit its final judgment must be considered a motion to correct error[]" because "[m]otions to reconsider are properly made and ruled upon prior to the entry of final judgment." *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998) (citing Ind. Trial 53.4(A) (acknowledging the pre-judgment nature of motions to reconsider)). "Where a motion to correct error is grounded upon a claim that the trial court erred by granting summary judgment, we review on appeal the grant of summary judgment." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1240 (Ind. Ct. App. 2007).

The standard of appellate review of a summary judgment ruling is the same as that used in the trial court. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). Drawing all reasonable inferences in favor of the non-moving parties, summary judgment is appropriate only if the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Williams*, 914 N.E.2d at 761. If the moving parties demonstrate the absence of any genuine issue of fact, they are entitled to summary judgment unless the non-moving parties come forward with contrary evidence showing a triable issue for the factfinder. *Williams*, 914 N.E.2d at 761-62.

### A. Whether There Is a Genuine Issue of Material Fact as to the Identity of the Alleged Defamers

The Buzalskis argue that there is a genuine issue of material fact as to whether Johnson and Frazier made the alleged defamatory statement. Specifically, the Buzalski's claim it is reasonable to infer that Johnson and Frazier were the alleged defamers because: (1) the alleged defamatory statement immediately precedes Johnson's quoted statement; (2) Frazier made other statements concerning criminal activity at the Residence; and (3) Johnson and Frazier were the only neighbors named in Article 2. We are not persuaded.

Circumstantial evidence may be sufficient to create a question of fact only if the inference sought from the evidence is reasonable. *Ramon v. Glenroy Const. Co., Inc.*, 609 N.E.2d 1123, 1132 (Ind. Ct. App. 1993). "The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture." *Id.* That is the case here.

First, the proximity of Johnson's quoted statement to the alleged defamatory statement, without more, reflects neither an originary nor a temporal connection between the two. Second, Frazier's quoted statements only generally concern criminal activity and do not allude to prostitution, drugs, or gang activity. And third, although Johnson and Frazier are the only named neighbors in the article, they are not the only neighbors referenced therein. The designated evidence reveals that WNDU reporters interviewed other neighbors for the Article 2 and that Johnson and Frazier are not the "neighbors" cited as having taken digital photographs of the Residence. Appellants' App. p. 30. No reasonable trier of fact could attribute the alleged defamatory statement to Johnson and

8

Frazier based on this evidence.

## B. Whether There Is a Genuine Issue of Material Fact as to Johnson's and Frazier's Credibility

The Buzalskis argue that the trial court erred in granting summary judgment in favor of Johnson and Frazier based solely on their self-serving affidavits. "'[I]t is error to base summary judgment solely on a party's self-serving affidavits, when evidence before the court raises a genuine issue as to the affiant's credibility.'" *Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind. Ct. App. 2008) (quoting *McCullough v. Allen*, 449 N.E.2d 1168, 1172 (Ind. Ct. App. 1983)). The Buzalskis claim that Reader Kris's Article 1 comment establishes a genuine issue of fact as to Johnson's and Frazier's credibility.

The Buzalskis' claim is based on what they contend to be a reasonable inference that Reader Kris is, in fact, Kris Frazier. Such an inference, however, is far too tenuous to be reasonable. Reader Kris commented on Article 1 more than one year before Article 2 and the alleged defamatory statement were published. Moreover, like Frazier's and Johnson's quoted statements in Article 2, Reader Kris's comment does not allude to prostitution, drugs, or gang activity. The mere use of the word "thugs" is not enough. Finding no genuine issue as to Johnson's and Frazier's credibility, we conclude that the trial court did not err in basing summary judgment solely on their self-serving affidavits.

## C. Whether the Trial Court's Grant of Summary Judgment Prior to Discovery Was Inappropriate

The Buzalskis further argue that the trial court erred in granting summary judgment in favor of Johnson and Frazier without allowing reasonable time for discovery. "It is generally improper to grant summary judgment when requests for discovery are

pending," but a trial court may grant such a motion "when the pending discovery is unlikely to develop a genuine issue of material fact." *Diaz v. Carpenter*, 650 N.E.2d 688, 692 (Ind. Ct. App. 1995). Here, the Buzalskis point to no discovery requests that were pending at the time summary judgment was granted. And, as the trial court found, "[The Buzalskis] did not seek additional time within which to file their response or in any way suggest that additional time was necessary to formulate a response due to a desire to conduct or complete discovery." Appellants' App. p. 9. There being no *per se* rule barring the entry of summary judgment prior to discovery, we conclude the Buzalski's argument to be without merit. *See* T.R. 56(B) (providing that a defending party may move for a summary judgment "at any time").

## II. Trial Attorney's Fees

The Buzalskis also challenge the trial court's award of attorney's fees to Johnson and Frazier. Indiana Code section 34-52-1-1(b) provides for the award of attorney's fees for litigating in bad faith or for pursuing "frivolous, unreasonable, or groundless" claims. Such an award may be made upon a finding of any one of these statutory bases. *Smyth v. Hester*, 901 N.E.2d 25, 33 (Ind. Ct. App. 2009). In its order awarding Johnson and Frazier attorney's fees, the trial court found as follows:

> [T]he Complaint in this case was filed on the eve of the expiration of the statute of limitations and contended that libelous statements were made by [Johnson and Frazier]. [The Buzalskis] however were unable to present any evidence that [Johnson and Frazier] made the allegedly libel statements, and [Johnson and Frazer] have each signed Affidavits stating that they did not make the allegedly libel statements nor did they furnish WNDU with any photos or video. The Complaint was thus frivolous and groundless within the meaning of I.C. 34-52-1-1.

10

Appellants' App. p. 6.

"A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party." *Smyth*, 901 N.E.2d at 33. "A claim is 'frivolous' if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, or reversal of existing law." *Dunno v. Rasmussen*, 980 N.E.2d 846, 850-51 (Ind. Ct. App. 2012). "A claim or defense is *not*, however, groundless or frivolous merely because the party loses on the merits." *Smyth*, 901 N.E.2d at 33.

The Buzalskis argue that their claims are neither groundless nor frivolous because they are supported by evidence that Johnson and Frazier made the alleged defamatory statement. We disagree. As analyzed above, the Buzalskis' claims rely solely on unreasonable inferences that arise from arbitrary or mischaracterized evidence. We therefore conclude that the trial court was within its discretion in awarding attorney's fees to Johnson and Frazier.

### III. Appellate Attorney's Fees

Johnson and Frazier argue that they are entitled to an award of appellate attorney's fees, presumably pursuant to the Indiana Rules of Appellate Procedure. Appellate Rule 66(E) grants this court discretion to assess damages, including attorneys' fees, "if an appeal … is frivolous or in bad faith." Citing this court's not-for-publication memorandum decision in *Carbary v. Miller*, 49A02-1005-PL-582 (Ind. Ct. App. April 21, 2011), Johnson and Frazier claim, "Where the Appellate Court affirms the Trial

11

Court's award of fees, Appellate attorney fees are also appropriate." Appellees' Br. p. 11. Notwithstanding the impropriety of Johnson and Frazier's citing a memorandum decision as precedent, their claim is erroneous. Ind. Appellate Rule 65(D). "An appeal of an award of trial fees and costs *does not* automatically give rise to an award of appellate attorney fees." *Greasel v. Troy*, 690 N.E.2d 298, 304 (Ind. Ct. App. 1997) (emphasis added).

The judgment of the trial court is affirmed, and Johnson and Frazier's request for appellate attorney's fees is denied.

BAILEY, J., and MAY, J., concur.