## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 16 2016, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Katherine A. Sall-Matthews
Law Office of Martin R. Ulferts &
Associates
Michigan City, Indiana

ATTORNEY FOR APPELLEE

Bryan M. Truitt
Bertig & Associates, LLC
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery L. Nelson, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Lorri M. Nelson, n/k/a Lorri M. Miller <br> *Appellee-Respondent.* | March 16, 2016 <br><br> Court of Appeals Case No. 64A03-1506-DR-698 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Judge <br><br> The Honorable Mary A. DeBoer, Magistrate <br><br> Trial Court Cause No. 64D01-1007-DR-7158 |

**Mathias, Judge.**

[1] Jeffery L. Nelson ("Father") appeals the judgment of the Porter Superior Court ordering him to pay one-third of the college expenses incurred by his son, Cody

Nelson ("Son") and ordering him to pay $649.35 in attorney fees to his ex-wife, Lorri M. Miller ("Mother"). Father presents two issues for our review, which we restate as: (1) whether the trial court clearly erred in finding that Son had not repudiated his Father, and (2) whether the trial court abused its discretion in ordering Father to pay a portion of Mother's attorney fees.

We affirm.

## Facts and Procedural History

Mother and Father were married in February 1998 and had one child, Son, who was born in August 1995. When Son was fifteen years old, he and his girlfriend were watching a mixed martial arts competition along with Mother and Father. Father began to tickle Son's girlfriend, which prompted Son to playfully get his father into a wrestling hold. Son was unaware that he was actually choking Father. Mother told Son to let Father out of the hold, which he did. Father, who had been drinking, grabbed Son by the throat, pinned him against the wall, and said, "If you ever do that to me again, I'll f**king kill you." Tr. Vol. 1, p. 17.

Some time thereafter, on July 13, 2010, Mother filed a petition to dissolve her marriage with Father. The trial court's provisional order placed restrictions on Father's parenting time with Son due to Father's continued use of alcohol. Father refused to quit drinking and never exercised any parenting time under the provisional order. During the dissolution proceedings, when Son was fifteen years old, Father asked Son to take a paternity test. This made Son feel as if

Father did not want him as a child, but Son took the paternity test, which proved that he was Father's biological child. When later asked why he asked Son to take a paternity test, Father explained, "I don't feel I should be known as a paycheck." Tr. Vol. 1, p. 51.

[5] The parties participated in arbitration, which resulted in a recommended order being issued by the arbitrator and accepted by the trial court. This order noted that Father had not exercised his right to parenting time under the provisional order and therefore "there should be no visitation or parenting time pursuant to the Indiana Parenting Time Guidelines under the circumstances." Appellant's App. p. 10.

[6] Subsequent to this order, Father made little effort to contact Son. He did not exercise any parenting time or petition the trial court to award him parenting time. Although Son played multiple sports while in high school (basketball, volleyball, track, and soccer), Father attended only two of Son's basketball games after the divorce and attended none of the other sporting events. When Father did attend the basketball games, he sat on the side of the visiting team and did not speak with Son.

[7] Although he knew Son's mobile phone number, Father's last call to his son was in 2012. Father sent Son one text on his birthday after the separation, but thereafter, Father has not sent Son a birthday card, birthday present, Christmas card, or Christmas present. In fact, following the divorce, Father had seen Son a total of five times. Two of these times were at the sporting events mentioned

above, when he had no personal contact with Son. Another was a random encounter in a Subway restaurant, in which Father left without speaking to Son. Another encounter took place at Bass Lake when Son was sixteen years old. Father told Son to shake his hand "like a man" if he did not want to see Father again. Tr. Vol. 1., p. 60. Son shook Father's hand.

[8] The other encounter between Father and Son took place in the ICU of a hospital when Father's own father had emergency heart surgery. Son has maintained a close relationship with his paternal grandparents and went to see his grandfather. Father, however, has been estranged from his parents since the divorce because he believes that they "sided" with his ex-wife. Tr. Vol. 1, p. 48. Father and Son spoke briefly, but politely, at the hospital. Father then went to another area of the ICU and made no further attempts to speak with Son.

[9] Mother and Son invited Father to Son's high school graduation and held the graduation party at a neutral site so that Father would feel welcome to come. Father did attend the graduation ceremony but left after Son's name was announced and did not speak with Son. He also failed to attend the graduation party.

[10] After high school, Son began to attend Indiana University in Bloomington. Father's child support obligation terminated when Son turned nineteen.[1]

---

[1] *See* Ind. Code § 31-16-6-6(a) (providing generally that "[t]he duty to support a child under this chapter, which does not include support for educational needs, ceases when the child becomes nineteen (19) years of age.").

Thereafter, on May 13, 2014, Mother filed a petition requesting that Father be required to pay for a portion of Son's college expenses. On September 3, 2014, Father filed a response to Mother's petition in which he argued that he should not be required to contribute to Son's college expenses because Son had repudiated his relationship with Father. The trial court held a hearing on the issue of repudiation on October 31, 2014, at which the prior deposition of Son was admitted into evidence.

[11] In his deposition, Son emotionally and repeatedly stated that he wanted a relationship with his Father but that he felt as if Father wanted nothing to do with him. During cross-examination, Father's counsel attempted to contest the sincerity of Son's claims by asking if he would be willing to meet with Father that very day after the deposition. Son readily agreed, and Son met Father for lunch at a nearby restaurant after the deposition. However, Father took his girlfriend with him to act as a "witness." Tr. Vol. 1, p. 53.

[12] After the repudiation hearing, the trial court issued an order that same day finding that Son had not repudiated his relationship with Father. This order provided in relevant part:

> 5. On May 13, 2014, Mother filed a Petition for Modification to address [Son]'s plans to attend Indiana University-Bloomington.
> 6. On August 28, 2014, Mother filed an Amended Petition to Modify and for Educational Support.

7. Since the filing of Mother's petitions, Father has been sending his child support obligation to his attorney to be held in trust until this matter could be ruled on by the Court.

8. [Son] turned nineteen years of age and Father's obligation to pay child support terminated on August 31, 2014 and [Son] is emancipated as a matter of law.

9. Mother filed her petition seeking post-secondary education costs prior to [Son] turning 21 years of age.

10. Father has raised the issue of repudiation. Therefore, the Court conducted a hearing on that issue alone prior to entering further Orders relating to Mother's petitions.

11. Father argues that [Son]'s failure to engage in contact with Father should relieve him of his legal duty to contribute to [Son]'s post-secondary education expenses.

12. The Indiana Court of Appeals has held that a child's repudiation of a parent—under certain circumstances—will obviate a parent's obligation to pay for some expenses, such as college expenses. *Staresnick v. Staresnick*, 830 N.E.2d 127 (2005).

13. Repudiation becomes an issue when a child demonstrates a complete refusal to participate in a relationship with a parent.

14. In this Cause, Father was initially limited in his ability to exercise parenting time with his son because of the Court's concern with Father's use of alcohol. However, the Court did not eliminate Father's ability to engage in a relationship with [Son]. Father was only limited by not having overnight parenting time and by not being permitted to drink alcohol while [Son] was with him.

15. However, between the entry of the Court's Provisional Order on July 27, 2010 and the entry of the Decree on September 21, 2011, Father apparently opted to have no parenting time with [Son] which prompted the arbitrator to

deny Father parenting time until such time as their relationship could get back on track somehow.

16. Father states that he could not afford to hire counsel to file contempt actions against Mother related to his lack of parenting time with [Son]. The Court finds that position weak at best. Father has always been free to file a pro se motion for modification of parenting time had he so chosen and which would have been no cost to him.

17. It is clear to the Court that [Son] has been emotionally hurt by Father's actions before and during the dissolution and by his lack of actions following the Decree.

18. Unfortunately, Father does not seem to fathom how much his actions—threatening to f—g kill [Son] or requiring [Son] to take a paternity test to prove to Father he is in fact [Son]'s biological father—damaged his relationship with his son. Instead, Father opts to play the victim and throws up his hands with the attitude that "he knows where to find me."

19. This Court is not at all convinced that [Son], even when things were at their worst, would not have come around to the idea of rekindling his relationship with Father if Father had made even the slightest effort with [Son] himself rather than interjecting others into the equation.

20. Father seems to place fault at Mother's feet for not assisting him in his attempt to exercise parenting time. The Court does not consider Mother's directive to Father to "fix things with [Son] yourself" to constitute her impeding Father's ability to engage in a relationship with [Son].

21. Father recruiting his girlfriend, who [Son] did not even know, to engage in a text dialogue with [Son] to encourage Father having parenting time was similarly misplaced. Father could have and should have communicated with [Son] directly.

22. Father wants this Court to buy into the idea that [Son] washed his hands of him permanently because [Son]—at

age 16 and during the most contentious period of the parties' divorce—told Father he was not willing to have a relationship with him at that time. The Court is not willing to do so.

23. The Court questions where the Father and [Son] could have been had Father taken one simple step—to offer [Son] an apology. Unfortunately, Father paints himself as the "checkbook" or "paycheck" rather than making constructive efforts to mend what he helped break.

24. Ultimately, it is this Court's hope that Father and [Son] find a way back into each other's lives. The lunch they shared following [Son]'s deposition appeared to be a step in the right direction. However, Father may have to abandon his suspiciousness and need for witnesses to be present to enjoy true quality time getting to know his now adult son again.

25. The Court finds that [Son] did not repudiate his relationship with Father and Father shall contribute to [Son]'s college expenses.

Appellant's App. pp. 31-35.[2]

[13] On May 20, 2015, the trial court held a hearing on the issue of the allocation of Son's college expenses. The following day, the court entered an order requiring Mother, Father, and Son to each be responsible for one-third of Son's college

---

[2] Father filed a motion to correct error on November 24, 2014, which the trial court denied without a hearing on December 11, 2014. However, the order on the issue of repudiation was not a final order since the actual issue of the allocation of Son's college expenses had not yet been decided by the trial court. Therefore, Father's motion to correct error should have been treated as a motion to reconsider. *See Keck v. Walker*, 922 N.E.2d 94, 98 (Ind. Ct. App. 2010) (noting that a motion to correct error filed after a non-final order was considered to be a motion to reconsider); *see also Hubbard v. Hubbard*, 690 N.E.2d 1219, 1220-21 (Ind. Ct. App. 1998) (considering motion to reconsider filed after final order to be a motion to correct error).

expenses. The court also ordered Father to pay $649.35 in attorney fees to Mother. Father now appeals.

## I. Repudiation

[14]    Father first argues that the trial court erred in determining that Son had not repudiated his relationship with Father. Indiana law provides that a court may enter an educational support order for a child's education at a post-secondary educational institution. *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015), *trans. denied*. However, repudiation of a parent by a child is recognized as a complete defense to such an order. *Id.* (citing *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994)). Repudiation is defined as a complete refusal to participate in a relationship with the parent. *Id.* (citing *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005)). There is no absolute legal duty on parents to provide a college education for their children; therefore, where a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child. *Id.* Accordingly, a child's complete refusal to participate in a relationship with a parent may obviate a parent's obligation to pay certain expenses, including college expenses. *Id.*

[15]    Here, the trial court found that Son did not repudiate Father. Upon review of such a finding, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Norris*, 833 N.E.2d at 1032-33. The trial court's findings and conclusions will be

set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.*

[16]    Considering only the evidence that supports the trial court's decision, we cannot say that the trial court's decision is clearly erroneous. To the contrary, the trial court's decision is grounded in the fact that, after the divorce, Father made little to no effort to contact his son or have anything to do with him. Although there was evidence that, soon after the divorce, Son had little desire to see Father, this was when Son was still a minor. *See Kahn*, 36 N.E.3d at 1112 (noting that repudiation occurs when an *adult* child of a party expresses a complete refusal to participate in a relationship with the parent). Indeed, much of Father's claim centers on the incident at the lake where Son, who was sixteen at the time, shook Father's hand. However, this was in response to Father's own request to Son to shake his hand if he did not desire to see Father. We decline to consider an obviously emotional response by a teenager as conclusive proof that Son wanted nothing to do with Father. To the contrary, there was evidence that Father's lack of contact with Son was emotionally upsetting to Son. Son believed that Father thought he was not "good enough" for Father, and wept during the deposition when asked why he thought Father did not want to see him. Moreover, Son clearly stated during the deposition that he *did* want a relationship with Father.

[17]    In contrast, Father had not telephoned or sent a text message to Son since 2012, sent him no birthday cards or presents, and sent no Christmas cards or presents. He came to only two athletic events, sat on the opposing team's side, and did

not speak with Son afterwards. He did not exercise his parenting time under the provisional order and did not petition the trial court for parenting time following the divorce. He did not speak with Son after his graduation ceremony and did not attend the graduation party even though it was held at a neutral site to encourage his attendance. When he saw Son at a restaurant, he left without speaking to him. When Son agreed to meet Father immediately after the deposition, Father brought his girlfriend as a "witness."

[18] Father refers to evidence which does not support the trial court's decision, such as his texting Mother to attempt to facilitate communication with Son. Mother responded that Father needed to contact Son himself. Father also points to a text message sent to Mother in which Son referred to Father as a "piece of shit" and Father's girlfriend as a "bitch." Appellant's App. p. 48. However, this was shortly after the divorce, when Son was still a relatively young teenager. It was also in response to Father having his girlfriend attempt to contact Son, instead of contacting Son himself. More importantly, on appeal, we may not consider the evidence that does not favor the trial court's judgment.

[19] In short, the evidence favorable to the trial court's judgment is sufficient to support the trial court's conclusion that Son did not repudiate his relationship with Father. To the contrary, Father did almost nothing to repair his broken relationship with Son and now seeks to cast the blame on Son, who testified that he did want a relationship with Father. We therefore conclude that the trial court did not clearly err in concluding that Son did not repudiate his relationship with Father.

[20] Father's citation to *McKay*, *supra*, is unavailing. In that case, the father had attempted to reconcile with his son, but the son rejected any such attempts by his father. 644 N.E.2d at 168. The father in *McKay* also sought the assistance of the courts in his attempts to reconcile with his son. *Id*. Also, the son testified that he had no interest in a relationship with his father and that nothing could be done to change his mind in this regard. *Id*. Therefore, in *McKay*, the court noted that "Father has stood with open arms to reestablish a father-son relationship with [son]. [Son], on the other hand, has rejected Father's invitation and has instead obtained a court order requiring Father to stand with outstretched, open wallet." *Id*. This is in stark contrast to the present case where Father did little to reconcile with Son and did not seek the trial court's assistance in establishing visitation. Nor did Son reject Father as in *McKay*; instead, Son testified that he did want a relationship with Father.

[21] We fully agree with the trial court that Son has not repudiated Father. To condone a finding of repudiation under these facts and circumstances would be to reward Father for his stubborn, angry, and immature behavior. However, we also hope, as did the trial court, that Father and Son can join each other on a path towards full reconciliation.

## II. Attorney Fees

[22] Father also claims that the trial court erred in ordering him to pay $649.35 in attorney fees to his Mother. The award of attorney fees is committed to the sound discretion of the trial court. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Thus, "in the absence of an affirmative showing of error or

abuse of discretion we must affirm the trial court's order." *Campbell v. El Dee Apartments*, 701 N.E.2d 616, 622 (Ind. Ct. App. 1998). Indiana follows the American Rule, whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009).

[23] The trial court here appears to have awarded fees pursuant to Indiana Code section 34-52-1-1(b), which provides that a trial court in a civil case may award attorney fees to the prevailing party if the court finds that a party: (1) "brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless," (2) "continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless," or (3) "litigated the action in bad faith."

[24] A claim is frivolous if it is taken primarily for the purpose of harassing or maliciously injuring a person, if the lawyer is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for the extension, modification, or reversal of existing law. *Smyth*, 901 N.E.2d at 33. A claim is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. *Id*. A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party. *Id*. Of course, a claim or defense is not groundless or frivolous merely because the party loses on the merits. *Id*.

Here, we cannot say that the trial court abused its discretion in concluding that Father's claim that Son had repudiated their relationship was either groundless or frivolous. There was a complete dearth of evidence indicating that Son had repudiated his relationship with Father, especially after he reached the age of eighteen. Instead, the evidence showed that Father had made only a few small attempts to have any contact with his Son. The evidence shows that Son did want a relationship with Father, and that the reason for the breakdown in the relationship was almost exclusively due to Father's actions and inaction. Under these facts and circumstances, the trial court did not abuse its discretion in awarding Mother $649.35 in attorney fees.

## Conclusion

The trial court did not clearly err in concluding that Son did not repudiate his Father, nor did the trial court abuse its discretion in awarding Mother $649.35 in attorney fees to counter Father's groundless claim of repudiation.

Affirmed.

Kirsch, J., and Brown, J., concur.