Joseph A. DAVIDSON and Phyllis A. Davidson, Appellants–Plaintiffs,

v.

BOONE COUNTY, the Boone County Area Plan Commission, and Jerry March, Executive Director of the Boone County Area Plan Commission, Appellees–Defendants.

No. 06A05–0007–CV–289.

Court of Appeals of Indiana.

April 10, 2001.

Frank C. Capozza, Indianapolis, IN, Attorney for Appellants.

David F. Truitt, Anne M. Patterson, Jeffrey S. Jacob, Donaldson Andreoli & Truitt, Zionsville, IN, John R. Molitor, Molitor & Grisham, P.A., Carmel, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge

Joseph Davidson and Phyllis Davidson appeal the trial court's award of attorney fees to Boone County. Thus, the sole restated issue on appeal is whether the trial court abused its discretion in awarding attorney fees.

We affirm.

The underlying dispute in this case began over a decade ago after the Davidsons purchased a two-family house in December 1988, in Rosston, Boone County, which they intended to use as rental property. Without seeking approval or obtaining an Improvement Location Permit[1] (building permit) from the Boone County Area Plan Commission (APC), the Davidsons embarked on major renovations to the property. Despite being told by a contractor that he would not give them a plumbing estimate or do any work because they did not have a building permit, the Davidsons moved forward with their construction activities. Work proceeded on the project for about seven months without a permit.

On July 27, 1989, after discovering the violation and finding the building com-

---

1. Section 8.0(A) of the Boone County Comprehensive Zoning Ordinance provides, in part: "The Director, or his agent, shall be responsible for the issuance of all Improvement Location Permits for any alteration to the condition of land, or structures thereon, within the Jurisdictional Area of the Commission. Any person making said alterations must obtain an Improvement Location Permit from the Commission prior to the start of any construction...."

pletely gutted, the APC's Executive Director, Jerry March, placed a stop-work order on the project. The APC waived the fine for working without a permit. On July 31, 1989, March notified the Davidsons by letter of the reasons for the stop-work order and explained what was required to obtain a building permit, which included obtaining a sewage disposal permit from the Health Department. The Davidsons failed to submit plans, apply for either permit, or comply with the requirements for obtaining the permits. The Davidsons, instead, went to an APC meeting on August 2. At that meeting, March explained that a building permit would be issued once the Davidsons acquired a sewage disposal permit and submitted proper plans for a building permit. The Davidsons were also advised at this meeting that the Board of Zoning Appeals (BZA) was the appropriate administrative body to hear their grievances. The Davidsons then went to the APC meeting in October 1989 and were again informed of the requirements of a sewage disposal permit and that they could appeal to the BZA.

Thereafter, for a period of two years, there was no contact between the parties until the fall of 1991. In March 1990, the original posted stop-work order fell down and the Davidsons again commenced work on the project without a permit. Work continued until October 1991, when a second stop-work order was posted on the property. In a letter dated October 16, 1991, the Health Department informed the Davidsons that a dye test needed to be completed before a septic system release could be issued. In November 1991, the Davidsons attended a meeting of the Boone County Board of County Commissioners. The basis of the Davidsons' argu-

ment to the Board was that it was unfair to require a dye test and Health Department approval when such testing was not being conducted at neighboring properties.

In January 1992, the Davidsons finally appealed to the BZA, challenging the requirement of a sewage disposal system inspection prior to the issuance of a building permit. Up to this point, the Davidsons had made no effort to apply for a building permit. Unsuccessful with the BZA, the Davidsons filed a petition for writ of certiorari with the circuit court, alleging that the local ordinances were being applied in an arbitrary and discriminatory manner by March. Following a hearing where additional evidence was presented concerning the number of bedrooms in the house,[2] the court ordered on October 8, 1992 the issuance of a building permit to the Davidsons upon proper application by them. Specifically, the court found that the house previously contained six to eight bedrooms and concluded that the evidence relied upon by the BZA was "incomplete and, therefore, incorrect, thus rendering its decision regarding the Plaintiffs illegal under statute." *Record* at 562. The court made no findings regarding discrimination. Following the court's ruling, the Davidsons immediately filed an application and the APC issued the permit that same day. Work began once again on the project.

On October 16, 1992, Jay Tranbarger performed an electrical inspection of the property and found several code violations, most notably that electrical panel boxes were located inside two closets. When Tranbarger tried to explain the violations, Mr. Davidson ordered Tranbarger off his property. Tranbarger subsequently advised the Davidsons of the code violations

---

**2.** The number of bedrooms was relevant to the determination of whether septic clearance was needed from the Health Department.

through a letter with the relevant code provisions attached.

During a second inspection on November 23, 1992, Tranbarger again found the electrical panel boxes in the closets. The Davidsons were advised how they could comply with the code without having to rewire. Finally, in December 1992, the Davidsons followed this advice and corrected the electrical violations, passing the electrical inspection.[3] At this point the project was ready for a rough-in inspection, but the Davidsons did not request this final inspection for several years. During this delay, there was no contact between the Davidsons and any of the defendants outside of the surrounding litigation.

In March 1995, the parties agreed to delegate future inspections to George Wooley, an independent state building inspector. Wooley conducted an inspection of the property soon thereafter, finding a few code violations that were subsequently corrected. The Davidsons filed a writ of mandate action on June 27, 1995 to obtain Wooley's inspection report from the APC. This report was voluntarily turned over to the Davidsons on July 14, 1995. Thereafter, the Davidsons did not call Wooley back to the property to perform a final inspection until August 1997. At that time, Wooley issued his approval. The APC issued a certificate of occupancy to the Davidsons on August 12, 1997.

The instant action commenced on April 13, 1993, when the Davidsons filed their original complaint against Boone County, the APC and March (collectively referred to as "Boone County"), alleging that the building codes were being enforced in an arbitrary and discriminatory manner against them. The Davidsons filed their Second Amended Complaint on June 24, 1995, which served as the basis for this litigation. The multiple claims[4] in the complaint were premised on alleged discrimination; in essence they amounted to claims of an unequal application of the law as to them motivated by the hatred and malice of March.[5]

Following a six-day bench trial and a denial of Boone County's motion for judgment on the evidence, the trial court entered judgment on July 31, 1998 in favor of Boone County on all counts. The court further found that the Davidsons had filed an unreasonable, groundless, and frivolous action. Therefore, the Davidsons were ordered to pay Boone County's attorney fees, costs, and expenses incurred in defending the action. The Davidsons initiated an appeal of the judgment on August 25, 1998. The appeal, however, was dismissed on January 31, 2000 as untimely because the trial court had yet to enter final judgment on the amount of attorney fees. Thereafter, following a hearing, the trial court awarded Boone County $79,085.02 in attorney fees, costs, and expenses.

■ The Davidsons argue that the trial court abused its discretion by *sua sponte* awarding attorney fees to Boone County. Specifically, they observe that Boone

---

**3.** It is interesting to note that the electrical panel boxes were again discovered inside the closets during an inspection just prior to trial.

**4.** The complaint alleged negligence, denial of equal protection, malicious abuse of power/public office, denial of due process, inverse condemnation, and violation of 42 U.S.C. § 1983.

**5.** There were clearly strong feelings of ill will between the Davidsons and March, which stemmed from an earlier conflict in connection with the Rosston Trailer Park when Mr. Davidson fervently complained to March and others about sewage emanating from the park.

County never alleged the action was unreasonable, groundless, or frivolous nor requested such an award of damages. Further, Boone County did not file a motion for summary judgment, and the trial court denied Boone County's motion for judgment on the evidence, following the Davidsons' case-in-chief. Further, they contend that the lengthy trial transcript, the fact that they called seven witnesses and two rebuttal witnesses, in addition to their own testimony, and introduced about 100 exhibits, establish that their claims were not frivolous, unreasonable, or groundless.

■ Litigants must generally pay their own attorney fees. *Kintzele v. Przybylinski*, 670 N.E.2d 101 (Ind.Ct.App.1996). Thus, an award of attorney fees is not allowable in the absence of a statute, agreement, or stipulation authorizing such an award. *Id.* In Indiana, Ind.Code § 34–52–1–1 governs the award of attorney fees for litigating in bad faith or for pursuing frivolous, unreasonable or groundless claims.[6] Ind.Code Ann. § 34–52–1–1 (West 1999). This statute provides, in relevant part:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Pursuant to this statute, a court may award attorney fees upon a finding of any one of these elements. *Kintzele v. Przybylinski*, 670 N.E.2d 101.

This court has developed guidelines for addressing frivolous or unreasonable claims:

"[A] claim or defense is 'frivolous' (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

[A] claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified.

[A] claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party."

*Garza v. Lorch*, 705 N.E.2d 468, 473 n. 10 (Ind.Ct.App.1998) (quoting *Kahn v. Cundiff*, 533 N.E.2d 164, 170–71 (Ind.Ct.App. 1989), *adopted*, 543 N.E.2d 627 (Ind.1989)).

■ When reviewing an award of attorney fees, we first review the trial court's findings of fact under a clearly erroneous standard and then we review de novo the trial court's legal conclusions. *Emergency Physicians of Indianapolis v. Pettit*, 714 N.E.2d 1111 (Ind.Ct.App.1999), *adopted in relevant part*, 718 N.E.2d 753 (Ind.1999). Finally, we review the trial

6. We note that 42 U.S.C. § 1988(b) also provides a fee-shifting provision for the prevailing party in § 1983 actions. Under this statute, a trial court may award reasonable attorney fees to a prevailing defendant upon a finding that the plaintiff's underlying claim is frivolous, unreasonable, or groundless. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

court's decision to award attorney fees and the amount thereof under an abuse of discretion standard. *Id.* In reviewing the findings of fact we neither reweigh the evidence nor judge witness credibility, but rather we review only the evidence and reasonable inferences drawn therefrom that support the trial court's findings and decision. *Kahn v. Cundiff,* 533 N.E.2d 164. Further, in reviewing under the clearly erroneous standard, we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Id.*

■ Initially, we observe that the Davidsons appear to contend that a trial court does not have the power to award attorney fees *sua sponte.* They do not support this contention with any argument or citation to authority. Therefore, it is waived for failure to present cogent argument. *See Choung v. Iemma,* 708 N.E.2d 7 (Ind.Ct.App.1999).

Waiver notwithstanding, we conclude that a trial court may *sua sponte* award attorney fees pursuant to I.C. § 34–52–1–1. The statute provides that the court "may" award attorney fees if the court finds that either party has litigated in bad faith or pursued a frivolous, unreasonable, or groundless claim. Further, the statute does not specifically require that the injured party move for an award of attorney fees under the statute before the trial court can exercise its discretion in this regard. We hold, therefore, that the trial court had authority to award attorney fees in this case without a prior request from Boone County. *Cf. GEICO Ins. Co. v. Rowell,* 705 N.E.2d 476 (Ind.Ct.App.1999) (*sua sponte* award of appellate attorney fees, pursuant to former Ind. Appellate Rule 15(G), upon finding that appeal was permeated with bad faith).

■ The Davidsons' argument that Boone County has waived its claim to at-torney fees is similarly unavailing. Boone County was not required to file a claim for attorney fees pursuant to I.C. § 34–52–1–1 prior to final adjudication. *See Kintzele v. Przybylinski,* 670 N.E.2d at 103 ("when responding to a complaint, the party is not required to file a claim for attorney's fees pursuant to I.C. § 34–1–32–1 [now I.C. § 34–52–1–1] prior to a final adjudication"). As the trial court awarded such fees in its final adjudication, any claim Boone County may have subsequently filed in this action for attorney fees was rendered moot. Thus, Boone County could not have waived a claim for attorney fees that had already been awarded by the trial court.

■ Turning to the trial court's findings and conclusions regarding the frivolousness, unreasonableness, and groundlessness of the Davidsons' claims, we consider the following findings and conclusions particularly relevant:

> The court finds that instead of cooperating with the Area Plan Commission and the ordinances of Boone County the plaintiffs tried to work around the system and avoid the legal requirements. They did the "political" thing by going to Area Plan Commission meetings, by loud and long complaining of the plan director. They went to various politicians in and about Boone County and complained of the plan director. They went to Plan Commission, Board of Zoning Appeals and Board of Commissioners meetings and complained that they could not get satisfaction or cooperation from the plan director.

> The evidence is that they did not try to get their location improvement permit. They did not fill out the application. They simply determined to work around the system. The evidence clearly supports the conclusion that the plain-

tiffs did not think that the laws applied to them. This is evident from their beginning without getting a permit and this is borne out by their avoidance of making an effort to comply and cooperate. The court does not believe and does not find that actual discrimination against plaintiffs on the part of March is supported by the evidence. The court finds in consideration of the totality of the evidence that the plaintiffs had been their own worst enemies in this project. They have, by painting Jerry March as being full of hatred and malice toward them, made themselves the victims of imagined and exaggerated comments and statements attributed to March. By painting themselves as victims they have then put themselves in a position of being aggrieved and having a claim against March and the Boone County Area Plan Commission. The plaintiffs had ample time and opportunity to, in the course of the history of this project of some seven and a half years, timely complete their project. They had ample time to obtain a location improvement permit or by applying and being denied, being given the runaround, and harassed by the office they could have demonstrated that there was indeed discrimination against them. However, they did not take that action which would have directly shown discrimination. They have tried to do it by innuendo and by appealing to politicians and political processes rather than by going through the quasi legal process beginning with the application. The damages they have incurred, if any, are a result of their own sitting on their rights, letting time go by without taking any action, either in terms of applying for a permit or working at the project when they had the permit and the opportunity to proceed.

The court finds that the only action taken by the defendants which provided an impediment to the plaintiffs in going forward on the project was the requirement of the location improvement permit and the sewage system approval. Other than that the defendants made no demands on the plaintiffs whatsoever that would impede their ability to work on the project in any way. The plaintiffs on the other hand have "kept the pot boiling" by continuing to talk to people, make misrepresentations, spread gossip and half-truths in an effort to continue to stir up trouble. One indication of this is the uncontradicted testimony that Mr. Davidson specifically enlisted the aid of others to "get rid of Jerry March." The court also finds that the allegations and the statements attributed to March by Davidson are not believable; Davidson having been a person who, while he was working as an over-the-road truck driver, had someone else take the physical for him because he knew that he could not pass it and he wanted to continue to work as an over-the-road truck driver.[7]

The court finds, given the chronology of events surrounding this transaction, and the litigation and given the facts as they are most believable, that there are no facts which support any disparate treatment of the plaintiffs by the defendants.

With regard to the negligence claim the defendants in the first place are entitled to government immunity pursuant to Indiana Code, Section 34–4–16.5–3. In the second place they had no legal duty to plaintiffs which was breached.

---

7. We note that the trial court misstates the evidence here, as Davidson actually had someone take his physical so that he could obtain different employment rather than remain a trucker.

With regard to the claim for the malicious abuse of power and public office there are no facts to support that claim. There is no basis in law for such a claim. There was no denial by the defendants of any right of the plaintiffs by reason of any malicious abuse of power or public office. Any harm that the plaintiffs suffered was self-inflicted.

With regard to the claim based on inverse condemnation, there was no taking of property. There are no facts to support a claim of taking of property. There is no unreasonable denial of the use of property. The defendants have no powers of eminent domain and any damage that plaintiffs suffered was a result of their own inability or unwillingness to follow the lawful procedures outlined by the Boone County ordinances. The ordinances, the implementation of them and the enforcement of them as indicated in the evidence developed in this case was a valid exercise of the police power by Boone County.

With regard to violations of 42 U.S.C. 1983, the court finds that this section of the law does not apply to the defendants or the plaintiffs' claim. The actions of the defendants taken in the course of this transaction and litigation were lawful. They were not discriminatory. None of the defendants are policy-making bodies. They are simply in place to implement and enforce the policies taken by the Boone County Commissioners and placed in effect. The actions of the defendants do not indicate implementation of any policy directed at either of the plaintiffs personally or at this project in any discriminatory manner.

With regard to the constitutional claim of deprivation of property without due process the court finds that there are simply no facts to support that claim and that there was neither a taking nor a deprivation of property. The court further finds that the plaintiffs were accorded due process. They chose not to take advantage of the process and they can not (sic) now complain of any loss from not using the process available to them.

Based on the foregoing the court finds that by the bringing of this action without having previously applied for the location improvement permit and without developing any rational indicia of discrimination, plaintiffs have commenced an unreasonable claim. The claim is unreasonable when based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim was worthy of litigation or justified. The court finds that in April of 1993 there was no sound basis for any claim in law or fact or any claim based on any damages they may have incurred at that time. The court finds that any damages they incurred were a result of their own manipulation of the Area Plan Commission, Board of Zoning Appeals, plan director and the system in general. As mentioned above the court finds they made themselves into victims in order to subvert the intent and avoid the requirements of the ordinances adopted by Boone County. Therefore the court finds that the claim filed by them is unreasonable.

The court further finds that the claim is groundless because there are no facts existing which support the legal claim and which could be reasonably relied on and presented by the plaintiffs. The findings above reveal that the plaintiffs are attempting to manipulate the Boone County government and have presented no credible facts of any probative value to support any of their claims of disparate treatment or discrimination.

The court further finds that the action is frivolous, that the action has been brought by the plaintiffs primarily for

the purpose of harassing the defendants, particularly Jerry L. March. This is borne out very clearly if one reads the plaintiffs' Post Trial Brief [8] which goes on at great length to vilify Jerry March and to focus the argument on his attitude and his actions. The court believes that the brief is reflective of the shallowness and weakness of the plaintiffs' claim and the frivolity of the plaintiffs' claim.

Finally, the court finds that the defendants should recover from the plaintiffs the attorney's fees, costs and expenses of the action incurred by them in defending this unreasonable, groundless and frivolous litigation.

. . . .

*Record* at 499–502.

The thrust of the Davidsons' argument on appeal is a request for us to reweigh the evidence and judge witness credibility.[9] This we will not do. *See Kahn v. Cundiff,* 533 N.E.2d 164. Here, the findings of the trial court are supported by the evidence and are not clearly erroneous. These findings reveal in part that the Davidsons purchased property and chose to begin the extensive remodeling process without attempting to obtain an improvement location permit as required by local ordinance. Further, the Davidsons recommenced work on the property after the first stop-work order fell down. This work continued without a permit and without Boone County's knowledge for well over a year. In fact, the Davidsons never attempted to fill out an application for a building permit until the circuit court ordered that a permit be issued several years after the initial stop-work order. The APC then immediately issued a building permit. The Davidsons, however, proceeded to take nearly five years to finish the project, allowing several years between each of their requests for inspection.

The Davidsons also make much of the fact, without citation to any legal authority, that they survived a motion for judgment on the evidence and, therefore, their claims were not frivolous, unreasonable, or groundless. We cannot agree with such a blanket statement. This case hinged on a credibility determination. In their complaint and during their case-in-chief, the Davidsons made numerous allegations of foul play by March and Boone County. Specifically, they painted themselves as the victims of March's hatred, alleging that they followed all of the rules and attempted on several occasions to obtain an application for a permit to no avail. They also testified to numerous statements of ill will against them attributed to March. The trial court denied the motion for judgment on the evidence to afford itself an opportunity to view the evidence as a whole and judge the credibility of the witnesses in order to determine what were later revealed to be only smoke screens

---

8. We note that only three pages of the Davidsons' thirty-eight page Post Trial Brief discuss the six legal claims raised in their seconded amended complaint, with very brief references to legal authority. The remainder of the brief falls under headings such as: "HATRED WAS AND STILL IS THE MOTIVE[;]" "THE RECORD CONTAINS OVERWHELMING EVIDENCE THAT THE MISTREATMENT OF THE DAVIDSONS BY JERRY MARCH AND THE OTHER DEFENDANTS IS DRIVEN BY HATRED[;]" and, "JERRY MARCH WAS NOT SATISFIED WITH A RED TAG—HE WANTED TO DERAIL THE DAVIDSON PROJECT!''.

9. For example, the Davidsons' appellate brief asserts in its facts:

 The next day Joe Davidson went to March's office to start the permit process, but March would not give him the paperwork.
 Joe Davidson tried to apply for a building permit, but was never provided with an application.

 Record at 6–8. These statements are in direct conflict with the trial court's findings.

raised by the Davidsons. The denial does not necessarily negate the possibility that the claims were frivolous, unreasonable, or groundless.

 We agree that a claim is not rendered frivolous, unreasonable, or groundless simply because a party loses at trial. *See Fisher v. Estate of Haley,* 695 N.E.2d 1022 (Ind.Ct.App.1998). We do not agree, however, that the quantity of evidence presented by the losing party, without regard to the evidence's credibility or probative value, is the determinative factor in deciding whether a claim is frivolous, unreasonable, or groundless.[10] Here, the evidence presented on behalf of the Davidsons almost entirely relied on their credibility. In the end, the trial court did not find the allegations and the statements attributed to March by the Davidsons believable, and the court, further, found that the Davidsons made themselves victims in their attempt to circumvent the system.

In light of the trial court's findings of fact, we conclude that the Davidsons' claims were unreasonable and groundless and that the trial court, therefore, did not abuse its discretion in granting attorney fees to Boone County.

Judgment affirmed.

MATTINGLY and BAILEY, JJ., concur.

---

**10.** In *Fisher v. Estate of Haley* we specifically noted, "Fisher introduced twenty-two exhibits into evidence, called three witnesses and took the stand himself to testify to matters the trial court would allow." 695 N.E.2d 1022, 1029. We further stated, "[c]learly, Fisher was not relying only on himself as a witness to prove his claim...." The Davidsons seize on this language and seem to reason that once one relies on other witnesses, their claim cannot be frivolous, unreasonable, or groundless. This is incorrect. The argument made by the appellant in *Fisher* was that because the trial court had ruled Fisher to be an incompetent witness seven months prior to the hearing on his claim, he had ample opportunity to dismiss his claim. We concluded, however, that such ruling only made his claim harder to prove. The above quotations, therefore, explained why continuing to litigate after the court's ruling was not frivolous, unreasonable, or groundless.