**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 18 2014, 9:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**ROBERT G. BOTTORFF II**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEES:

**MATTHEW J. McGOVERN**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT F. LYNN, LINDA S. LYNN, and ROBERT LYNN COMPANY, INC., | ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 10A01-1309-PL-386 |
| RONNIE SHAFFER and JANE SHAFFER, | ) ) ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Roger L. Duvall, Special Judge
Cause No. 10C04-0810-PL-1045

**September 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, Robert F. Lynn (Robert), Linda S. Lynn (Linda), and the Robert Lynn Company, Inc. (RLC) (collectively, the Lynns), appeal the trial court's award of attorney fees to Appellees-Petitioners, Ronnie and Jane Shaffer (the Shaffers).

We reverse.

## ISSUES

The Lynns raise one issue on appeal, which we restate as follows:  Whether the trial court abused its discretion by ordering the Lynns to pay the Shaffers' attorney fees.

The Shaffers raise one issue on cross-appeal, which we restate as follows:  Whether the Lynns waived their right to appeal by filing a belated motion to correct error.

## FACTS AND PROCEDURAL HISTORY

RLC is a real estate development company located in New Albany, Indiana.  Robert is RLC's president, and Robert and Linda are the sole shareholders.  In 2002, RLC commenced development of a large parcel of property it owned in Charlestown, Clark County, Indiana.  RLC dubbed the 100-lot residential neighborhood the Ashley Springs Subdivision (Subdivision).  On July 16, 2002, RLC recorded Restrictions and Protective Covenants (Covenants) in the Clark County Recorders Office.

The Covenants, which govern the planning and use of the Subdivision, established the creation of an Architectural Control Committee (Committee).  The Committee is comprised solely of Robert and Linda and is charged with approving the plans and

2

specifications of all buildings and alterations made within the Subdivision.[1]  In part, the Covenants restrict the homeowners' conduct with respect to their landscapes.  The homeowners are prohibited from erecting any type of fencing without "the prior written consent and/or approval of [RLC], which would specify material used and location." (Appellees' Exh. 1).  The Covenants stipulate that wrought iron fencing is preferred, but RLC may permit chain-link or wooden fences upon request.  Also, prior to the completion of the Subdivision's development, RLC has "full and final say concerning construction and/or erection of exterior fences."  (Appellees' Exh. 1).  Upon completion of the Subdivision, however, the Committee will dissolve, and "approvals and deviations from the [Covenants] must be approved in writing by a majority of the adjacent property owners in the [S]ubdivision."  (Appellees' Exh. 1).

In February of 2007, the Shaffers purchased a home in the Subdivision.  In July of the following year, Ilena Joy Earl (Earl)[2] purchased the house on the lot adjacent to the Shaffers' property and, shortly thereafter, enclosed her yard with a fence.  On September 3, 2008, the Shaffers wrote a letter to RLC expressing their dissatisfaction with Earl's new fence, which they described as "part black chain link with [a] double gate, this part of the fence looks nice.  However, the rest of the fence is woven wire cattle fence on wood post and the gate is a regular double cattle gate with barbed wire on top of the woven wire fence."  (Appellees' Exh. 5).  The Shaffers demanded to know why the Committee had

---

[1] As the trial court found, "[f]or all practical purposes, [RLC, Robert, Linda, and the Committee] are one [and] the same."  (Appellants' App. p. 9).
[2]  The Shaffers also included Earl in their lawsuit as a co-defendant.  On January 30, 2013, the trial court entered judgment in Earl's favor.  Earl is not a party to this appeal.

approved this type of fence and stated, "We purchased our property because of the [Covenants]. We are not pleased." (Appellees' Exh. 5). On September 9, 2008, Robert informed the Shaffers that Earl's woven wire fence had not been pre-approved, but he had "personally inspected the complete fencing job and [did] not find it objectionable because of where the lot is located and of its extended area behind the drain swale." (Appellees' Exh. 6).

On September 13, 2008, the Shaffers submitted a request to the Committee for permission to install a fence identical to Earl's on their property. The Committee denied the Shaffers' request on September 16, 2008, without explanation. Robert later clarified that he approved Earl's fence but denied the same for the Shaffers because the Shaffers' property line "abuts directly . . . to two other lots in the [Subdivision,]" whereas Earl's non-conforming fence does not adjoin another platted lot. (Transcript p. 75). On September 29, 2008, after receiving information that the Shaffers were installing a chain-link fence, RLC provided official notice to the Shaffers that they were in violation of the Covenants. On October 2, 2008, the Shaffers informed RLC that they installed posts to mark their property lines but "have no fence." (Appellees' Exh. 10). The Shaffers added, "We have no issues with restrictions[,] we just want them to be equally enforced to all." (Appellees' Exh. 10). On October 6, 2008, the Shaffers notified RLC that it had removed the posts and demanded that RLC provide notice to the other homeowners that their non-compliant fences must also be taken down.

The Shaffers filed a Complaint on October 30, 2008, which they amended on April 3, 2009, alleging that the Lynns had failed to enforce the Covenants; that the Lynns'

4

discriminatory enforcement of the Covenants was arbitrary and capricious; and that the Shaffers had relied, to their detriment, on the Covenants as an inducement to purchase a lot in the Subdivision. On October 3, 2012, the trial court held a bench trial, at which the Lynns appeared *pro se*. Although the Shaffers had initially requested monetary compensation for the diminution of their property value, by the time of the trial, they sought only injunctive relief and attorney fees as damages. On January 30, 2013, the trial court issued an Order (Order #1) instructing the Lynns "to enforce the [Covenants]." (Appellants' App. p. 11). The trial court also found that "[t]he Shaffers are entitled to attorney fees" and set a two-week deadline for the Shaffers to submit an affidavit for attorney fees and for the Lynns to request a hearing on the matter. (Appellants' App. p. 11). The Lynns did not pursue a hearing, so on March 13, 2013, the trial court entered final judgment and issued an Order (Order #2) holding the Lynns jointly and severally liable for paying the Shaffers $12,649.45 in attorney fees.

On April 15, 2013, the Lynns filed a Motion to Correct Error. On June 19, 2013, the trial court held a hearing on the Motion, during which the parties disputed the propriety of the attorney fees award. On August 9, 2013, the trial court issued an Order (Order #3) denying the Lynns' Motion to Correct Error.

The Lynns now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *CROSS-APPEAL*: *Untimely Motion to Correct Error*

The Shaffers have raised a threshold procedural issue on cross-appeal; thus, we must address their claim first. The Shaffers contend that the Lynns' appeal should be dismissed

because the Lynns did not timely file their Motion to Correct Error. Although the Shaffers did not raise the issue of untimeliness at any point prior to their appellees' brief, we note that this is an issue of appellate jurisdiction, which may be raised by a party at any time or by our court *sua sponte*. *Bohlander v. Bohlander*, 875 N.E.2d 299, 301 (Ind. Ct. App. 2007), *trans. denied*.

A party initiates an appeal by filing a Notice of Appeal with the trial court within thirty days of a final judgment. Ind. Appellate Rule 9(A)(1). However, if the party instead opts to file a motion to correct error, such motion must be filed within thirty days of the final judgment, and any subsequent Notice of Appeal must be filed within thirty days of the trial court's ruling on the motion to correct error. App. R. 9(A)(1); Ind. Trial Rule 59(C). Here, the trial court entered final judgment on March 13, 2013, with its Order #2 granting the Shaffers' attorney fees. The parties agree that either a Notice of Appeal or a motion to correct error was due no later than April 12, 2013, as a prerequisite to our court acquiring jurisdiction. *See D.C., Jr. v. C.A.*, 5 N.E.3d 473, 475 (Ind. Ct. App. 2014). According to the Chronological Case Summary (CCS) and the file stamp date, the Lynns' Motion to Correct Error was not filed until April 15, 2013.

It is well established that "[w]hen a motion to correct error is not timely filed, the right to appeal is not preserved." *Dowell v. State*, 922 N.E.2d 605, 610 (Ind. 2010). However, the Lynns contend that their Motion to Correct Error was, in fact, timely filed, but that the Clark County Clerk of Courts "erroneously marked" the file stamp date. (Appellants' Reply Br. p. 2). After the Shaffers first raised the issue, on March 28, 2014, the Lynns submitted receipts and other documentation to the trial court clerk confirming

6

that they had deposited their Motion to Correct Error with a FedEx carrier on April 12, 2013, and paid for overnight delivery. Thereafter, the clerk corrected the filing date in the CCS and issued notice to the parties, explaining that "[t]he orig[inal] 2013 FedEx shipment failed to provide a discernable 'shipped' date" but that the Lynns' documents "clearly indicate the orig[inal] shipment/motion complied with [Trial Rule 5(F)] and should have been marked 'Filed 04/12/13' instead." (Appellants' Supp. App. p. 11).

Indiana Trial Rule 5(F)(4) provides that a motion may be filed with the court by "[d]epositing [it] with any third-party commercial carrier for delivery to the clerk within three (3) calendar days, cost prepaid, properly addressed." In addition, "[f]iling by registered or certified mail and by third-party commercial carrier shall be complete upon mailing or deposit." T.R. 5(F). Thus, even though the trial court did not receive the Motion until after the deadline had expired, it is evident that the Lynns timely filed their Motion to Correct Error on April 12, 2013, thereby preserving their right to appeal.[3]

## II. *APPEAL*: *Attorney Fees*

### A. *Standard of Review*

The Lynns claim that the trial court abused its discretion by awarding $12,649.45 in attorney fees to the Shaffers. Our review of a trial court's decision to award attorney fees is three-fold. *Smyth v. Hester*, 901 N.E.2d 25, 33 (Ind. Ct. App. 2009), *reh'g denied*; *trans.*

---

[3] Our court acquires jurisdiction over an appeal at the time the Notice of Completion of Clerk's Record is recorded in the CCS, which was on November 7, 2013, in this case. App. R. 8. Thereafter, any clerical mistakes in the record may only be corrected with leave of this court. T.R. 60(A). We note that no such leave was requested, but because the Lynns clearly complied with the filing requirements of Trial Rule 5(F), we find it to be more judicious to address the merits of this case rather than to hold the Lynns accountable for what is, at most, a clerical oversight.

7

*denied*. First, we consider whether the trial court's factual findings are clearly erroneous. *Id.* To assess whether findings are clearly erroneous, we consider only the evidence— along with any reasonable inferences drawn therefrom—most favorable to the trial court's judgment. *Id.* We do not reweigh the evidence or assess the credibility of witnesses, and we will uphold the trial court's judgment "unless we are left with a definite and firm conviction that a mistake has been made." *Id.* Second, we review any legal conclusions *de novo*. *Id.* Third, we determine whether the trial court abused its discretion in its decision to award attorney fees and for the amount thereof. *Id.*

## B. *The American Rule*

Indiana courts adhere to the "American Rule" in determining whether to grant a request for attorney fees. *Id.* at 32. Pursuant to the American Rule, parties are responsible for paying their own attorney fees absent an agreement of the parties, specific statute, or other rule authorizing the fees. *Id.* In this case, the trial court's authority to award attorney fees derives from the General Recovery Rule, which states:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).

## C. *Unreasonable Defense*

In Order #3, in which the court denied the Motion to Correct Error, the trial court indicated that it relied upon Indiana Code section 34-52-1-1(b)(1) for awarding attorney

8

fees. Specifically, the trial court found "that the indifference demonstrated by [the Lynns] towards [their] clear obligation constitutes an unreasonable defense." (Appellants' App. p. 13). Additionally, in Order #1, the trial court made the following findings in support of its decision that the Lynns should pay the Shaffers' attorney fees:

12.  The [c]ourt further finds that the actions by [the Lynns] have been arbitrary and capricious. [The Lynns are] solely responsible for the drafting of the [Covenants]. The intent of such a document is to preserve a certain standard within a subdivision and to contribute to a stability of value of property within a subdivision. This is an inducement to purchase lots within a subdivision and something with which a purchaser should be able to rely upon in making [his or her] purchase.

13.  [Robert] by his testimony stated that he felt that he was under no obligation to enforce the [Covenants]. He further stated that he could but didn't have to enforce the [Covenants]. When asked if he had told prospective purchase[r]s that he did not have to enforce the [Covenants,] his testimony is that he had never been asked.

14.  Such a position . . . by developers who seek public approval for their subdivisions, representing that certain standards will be maintained, selling lots and thereby profiting from those representations, and then to callously deny any subsequent duty is contrary to public policy and evidence of the capricious nature of [the Lynns'] behavior.

(Appellants' App. p. 10). Order #3 explicitly incorporates these findings.

On appeal, the Lynns argue that the trial court's Order #3

is devoid of any basis upon which a determination under [Indiana Code section] 34-52-1-1 could legitimately be founded. Similarly, the record itself [] does not mention a cognizable basis upon which the trial court may have relied in order to find [the Lynns] had behaved unreasonably in defending against the multitude of claims brought by [the Shaffers].

(Appellants' Br. p. 13 (internal citation omitted)). We agree with the Lynns that our court has previously remanded cases of attorney fees where the trial court's order failed to

9

provide "any insight as to the trial court's reason for the award of attorney fees . . . *i.e.*, what the trial court found to be frivolous, unreasonable, and bad faith conduct." *Smyth*, 901 N.E.2d at 36. However, in the present case, the trial court explicitly incorporated three findings from Order #1 into Order #3 as its rationale for finding the Lynns' conduct to be unreasonable. Accordingly, while the trial court's findings are not extensive, they are sufficient to inform our court of the trial court's logic in awarding attorney fees. Because the Lynns do not specifically challenge the trial court's findings, we proceed directly to the second step of our review and consider *de novo* whether, as a matter of law, the Lynns acted unreasonably in opposing the Shaffers' claims.[4]

"A claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." *Lockett v. Hoskins*, 960 N.E.2d 850, 853 (Ind. Ct. App. 2012). A claim or defense is not rendered unreasonable simply because a party loses his case on the merits. *McClure & O'Farrell, P.C. v. Grigsby*, 918 N.E.2d 335, 340 (Ind. Ct. App. 2009). A trial court need not "find an improper motive to support an award of attorney fees; rather an award may be based solely upon the lack of

---

[4] As an initial matter, the Lynns assert that the Shaffers have waived their right to seek attorney fees because they failed to raise the issue "both before and after [the Lynns'] defenses were clearly laid out." (Appellants' Br. p. 6). In particular, the Lynns contend that the Shaffers did not articulate a specific "statutory or contractual basis for such an award." (Appellants' Br. p. 6). We disagree. Notwithstanding the fact that the Lynns have waived this argument by failing to support it with cogent reasoning and citations to *relevant* authority, our court has previously held that a trial court may award attorney fees *sua sponte* under Indiana Code section 34-52-1-1. *Davidson v. Boone Cnty.*, 745 N.E.2d 895, 900 (Ind. Ct. App. 2001); *see* App. R. 46(A)(8)(a). Furthermore, in this case, the Shaffers did request attorney fees in their Complaint, and the General Recovery Rule does not stipulate that a moving party must cite the specific statutory basis therefore. *Davidson*, 745 N.E.2d at 900. Therefore, the Shaffers have not waived their claim.

a good faith and rational argument in support of the claim." *Chapo v. Jefferson Cnty. Plan Comm'n*, 926 N.E.2d 504, 510 (Ind. Ct. App. 2010).

Often, it is the overzealous representation of an attorney that gives rise to an unreasonable claim or defense. *See Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App.), *aff'd,* 543 N.E.2d 627 (Ind. 1989). Balancing the duty of attorneys to advocate for their clients against the potential chilling effect that awarding attorney fees could have on a party's right to access the courts, our court developed a list of factors to consider in determining whether a claim or defense is unreasonable:

> (a) the amount of time the attorney had to investigate the facts, research the law, and prepare the document; (b) the extent to which the attorney had to rely upon the client for the factual foundation; (c) the complexity of the factual basis and legal questions involved; (d) the ability to conduct a prefiling investigation, and the extent to which discovery was necessary and beneficial to the development of the factual basis; and (e) the plaus[i]bility of the arguments forwarded, including good faith efforts to extend or modify the law.

*Id.* at 171 n.3. The Lynns acted *pro se* at the trial. Thus, while we consider the totality of the circumstances in our review of the reasonableness of their defense, we find only two of the aforementioned factors particularly relevant to our analysis: the complexity of the factual basis and legal questions and the plausibility of the arguments.

Although the facts of this case are not in dispute, the Lynns' defense is wholly based upon their own self-serving interpretation of the Covenants. A restrictive covenant is an "express contract" between two parties—*i.e.*, the developer and the homeowner—in which the homeowner "agrees to refrain from using his property in a particular manner." *Burnett v. Heckelman*, 456 N.E.2d 1094, 1097 (Ind. Ct. App. 1983). Restrictive covenants are

generally disfavored in the law; however, because they are recognized as contracts, courts apply the same rules of construction and will enforce restrictive covenants so long as they are unambiguous and do not violate public policy. *Drenter v. Duitz*, 883 N.E.2d 1194, 1199 (Ind. Ct. App. 2008), *reh'g denied*; *Holliday v. Crooked Creek Vills. Homeowners Ass'n*, 759 N.E.2d 1088, 1092 (Ind. Ct. App. 2001). It is well settled that when a contractual dispute arises, the court endeavors to ascertain the intent of the parties by examining the language within the document and construing all "provisions so as to harmonize the agreement." *King v. Ebrens*, 804 N.E.2d 821, 826-27 (Ind. Ct. App. 2004). The construction of a contract is a matter of law. *Id.*

The Shaffers contend that the Lynns' defense is "absurd" because several provisions in the Covenants "expressly indicate that [the Lynns are] under an obligation to enforce the [Covenants]." (Appellees' Br. pp. 23-24). Construing the Covenants' provisions in their entirety, the trial court found that the Lynns' defense was unreasonable because the Lynns have a clear duty to uniformly enforce the Covenants. In fact, the trial court found that "[c]ommon sense would dictate that you cannot have a transfer of a duty to a third party without there being an obligation to enforce those duties in the first place." (Appellants' App. p. 10). Notwithstanding the Lynns' apparent lack of common sense in interpreting the Covenants, the trial court also found that "[i]t is equally clear from the evidence that the Committee and [RLC] are given a great deal of discretion under the [Covenants] to approve variations from those [C]ovenants." (Appellants' App. p. 9). We observe that such discretionary authority is prevalent throughout the Covenants. For example:

. . . [RLC] or its assigns shall have full and final say concerning construction and/or erection of exterior fences or walls, any fences subject to submission for approval must be wrought iron or have the appearance of wrought iron. Chain link fences may be considered for approval at [RLC's] option with [RLC] having the right to require coating, specify color, and determining all materials used and location allowed. Wood fences are discouraged and cannot be placed on any property without the prior written permission of [RLC] with [RLC] having no obligation to approve wood fencing.

(Appellees' Exh. 1). Based on this language, we find that the Lynns had a plausible basis for understanding the Covenants to afford them with discretion to approve or deny deviations from the Covenants.

Nevertheless, we do not disturb the trial court's conclusion that the Lynns have a clear obligation to enforce the Covenants. We disagree, however, with the trial court's determination that the Lynns' "arbitrary and capricious attitude towards [the Covenants]" justifies an award of attorney fees. (Tr. p. 276). Although they were ultimately unsuccessful on the merits, the Lynns made a rational, good faith argument based on their interpretation of the Covenants. Even the trial court "g[a]ve [Robert] credit, he was a straight-shooter at the hearing and he told me what he thought." (Tr. p. 273). The fact that the Lynns operated under an erroneous interpretation of their obligations regarding the Covenants does not, alone, give rise to an unreasonable defense. Based on these circumstances, we cannot say that "no reasonable attorney would consider the [defense] worthy of litigation." *Lockett*, 960 N.E.2d at 853. Accordingly, the Shaffers are not entitled to an award of attorney fees.

## CONCLUSION

13

Based on the foregoing, we conclude that the Lynns did not waive their right to appeal, and the trial court abused its discretion by ordering the Lynns to pay the Shaffers' attorney fees.

Reversed.

BRADFORD, J. concurs

ROBB, J. concurs in part and dissents in part with separate opinion

IN THE
COURT OF APPEALS OF INDIANA

ROBERT F. LYNN, LINDA S. LYNN, and    )
ROBERT LYNN COMPANY, INC.,            )
                                      )
    Appellants-Defendants,            )
                                      )
      vs.                            )    No. 10A01-1309-PL-386
                                      )
RONNIE SHAFFER and JANE SHAFFER,      )
                                      )
    Appellees-Plaintiffs.             )

**ROBB, Judge, concurring in part and dissenting in part.**

I concur with the majority regarding the timeliness of the Lynns' appeal, but respectfully dissent from the majority's conclusion that the trial court abused its discretion in awarding attorney fees to the Shaffers.

The trial court found that the Lynns had a clear obligation to enforce the Covenants and ordered them to do so. The trial court also awarded attorney fees to the Shaffers upon finding that the Lynns presented an unreasonable defense. The majority agrees that there was a clear obligation to enforce the Covenants, but holds the Lynns made a "rational, good faith argument based on their interpretation of the Covenants[,]" slip op. at 13, and their defense was not therefore unreasonable. I, however, agree with the trial court.

15

I find the defense is unreasonable because the Lynns' argument was not just based on their interpretation that they had no obligation to enforce the Covenants with respect to fencing. Their argument was that even if they had the obligation, they could enforce or not enforce the Covenants at their whim. The fence in question was described as a cattle fence—a "woven wire fence with a strand of barbed wire . . . a typical type of fencing that you use to keep cattle in . . . ." Tr. at 62. Robert agreed the fence was non-conforming and testified that had the fence in question been submitted for approval before it was erected, he would not have approved it; it having been already erected when he became aware of it, he did not find it objectionable. Tr. at 66-67. He could choose at his sole discretion to take action or not take action, and in this case he chose not to take action. Robert also testified that had the homeowner used the fence to keep cattle, "that would be a breaking of another covenant of the restrictions which doesn't allow livestock" and that he would be "instrumental in enforcing the restrictions of tested covenants in this regard . . . ." Tr. at 65. In other words, not only did the Lynns pick and choose what was allowed with respect to any given covenant, but they would also pick and choose what covenants would be enforced.

Given that our standard of reviewing a trial court's decision with respect to the award of attorney fees is one of abuse of discretion, and given that I believe the Lynns' defense was not just that they had no obligation to enforce the covenants but that they had no obligation to enforce the covenants uniformly, I would affirm the trial court in all respects.