

FILED

Jul 15 2016, 9:53 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEY FOR APPELLEES

Lincoln A. Baker
Lincoln A. Baker, PC
Petersburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

South Indiana Propane Gas, Inc.,

*Appellant-Defendant,*

v.

John Caffrey and Leola Caffrey,

*Appellees-Plaintiffs.*

July 15, 2016

Court of Appeals Case No.
19A05-1506-SC-716

Appeal from the Dubois Superior
Court

The Honorable Mark R.
McConnell, Judge

Trial Court Cause No.
19D01-1502-SC-263

**Pyle, Judge.**

## Statement of the Case

Appellant/Defendant, South Indiana Propane Gas, Inc. ("SIPG") appeals the trial court's order requiring it to pay a portion of the attorney fees of Appellees/Plaintiffs, John Caffrey ("John") and Leola Caffrey ("Leola") (collectively, "the Caffreys") on their breach of contract claim. The trial court held that the Caffreys could recover their attorney fees because SIPG's defense

to its breach of contract was unreasonable, groundless, or in bad faith. On appeal, SIPG argues that its defense was not unreasonable, groundless, or in bad faith because: (1) the issue of whether it was required to pay attorney fees was worthy of litigation; and (2) it performed under the contract within thirty days of learning of its failure to perform. Because we are not persuaded that SIPG's defense was not unreasonable, groundless, or in bad faith, we affirm.

We affirm.

## Issue

Whether the trial court erred in allowing the Caffreys to recover a portion of their attorney fees on their breach of contract claim.

## Facts

In July 2013, the Caffreys and SIPG executed a propane gas agreement ("the Agreement") in which the Caffreys agreed to fulfill all of their propane gas requirements between October 1, 2013 and March 31, 2014 through SIPG. In exchange, SIPG agreed to supply the Caffreys with 300 gallons of propane gas at a fixed price of $1.289 per gallon during that time period, with any remaining gallons that the Caffreys required to be charged at the contemporaneous market rate for propane gas. The Agreement further provided that the Caffreys "agree[d] to pay all costs incurred by [SIPG] if it [had to] enforce any of the terms of [the] Agreement, including but not limited to, reasonable attorneys fees. . . ." (Plaintiffs' Ex. A). The Agreement did not contain a similar provision granting the Caffreys the right to recover attorney fees in the event that they had to enforce the Agreement.

[4] On or about the same day that the Caffreys and SIPG executed the Agreement, the Caffreys prepaid the 300 gallons they were allowed to buy at a fixed rate, which totaled $414.09. The following winter, there was a national shortage of propane gas due to severe winter weather, and the national market price of the gas rose by almost two dollars per gallon more than the Caffreys had paid for their 300 gallons. During the third weekend of January 2014, John called SIPG and requested a delivery of the gas for which they had prepaid. The agent he talked to told him that the price of propane had reached $3.12 per gallon and that the company did not know what it was "going to do" with its prepaid contracts. (Tr. 10). The agent said that she would call John back, but she never did. Leola tried to call the agent back at one point and left a message, but she did not receive a response, either. Neither of the Caffreys received any written notifications from SIPG that the company was suspending its deliveries of propane.

[5] A month later, after the Caffreys still had not heard back from SIPG, they faxed a complaint concerning SIPG's actions to the Indiana Attorney General's Office ("the AG"). The AG also received complaints from other customers and sent SIPG a civil investigative demand ("CID") requesting information concerning the corporation's failure to distribute propane to its prepaid customers.[1] The CID informed SIPG that the AG had received complaints

---

[1] The General Assembly has given the AG authority to issue CIDs to investigate violations of specified laws. *Nu-Sash of Indianapolis, Inc. v. Carter*, 887 N.E.2d 92, 95 (Ind. 2008). Through a CID, the AG may request "production of documents for inspection, copying or reproduction; answers under oath to written

from its customers, but it did not identify the customers who had complained or inform SIPG how many customers had complained. Nevertheless, Eric Gibson ("Gibson"), SIPG's general counsel, later acknowledged that he knew "there [were] enough [complaints] that it generated the CID." (Tr. 69).

[6] Over the next few months, the Caffreys stayed in contact with the AG to inquire about the AG's progress in its investigation of SIPG. Under the CID's terms, SIPG had thirty days to provide the information that the AG had requested, but it asked for and received an extension of that deadline because the information the AG had requested was "quite voluminous." (Tr. 59). However, SIPG eventually filed its response, and some of SIPG's officials met with the AG in person. Subsequently, on December 23, 2014, the AG closed its investigation and advised the Caffreys that it would not pursue any further action against SIPG.

[7] As a result, in February of 2015, the Caffreys hired an attorney to help them recover the money that they had prepaid to SIPG. On February 4, 2015, the Caffreys' attorney sent SIPG a letter stating that it "appear[ed]" that SIPG had breached the Agreement. (Defendant's Ex. 4). He further stated in the letter that:

> The amount sought now is Four Hundred Fourteen and 09/100 Dollars ($414.09), plus attorney's fees in the amount of Two Hundred Seventy Dollars ($270) at this time and additional fees

interrogatories; or appearance and testimony under oath before the Attorney General or his representative" in order to determine whether a violation of a specified law has occurred. *Id.*

> if Court action should become necessary, and any other costs of collection.
>
> Unless you, within thirty (30) days after receipt of this Notice, dispute the validity of what you owe to the Caffreys, or any portion thereof, we will assume that the amount is valid. Litigation may be commenced at any time, notwithstanding this letter.

(Defendant's Ex. 4). SIPG's address was not listed on the Agreement, and the Caffreys' attorney accidentally sent the letter to SIPG's "physical address" rather than its "mailing address."[2] (Tr. 81). As a result, the letter was returned, and SIPG did not respond within thirty days.

[8] However, on February 26, 2015, before the thirty days the Caffreys had allowed in their letter had elapsed, they filed a complaint against SIPG in small claims court. In the complaint, they requested damages for the breach of contract, including: "[j]udgment against [SIPG] in the amount of $414.09 plus interest from July 31, 2013 at the rate of 8% per annum, plus attorney fees of $540.00, and costs of [the] proceeding of $81.00 plus 8% per annum interest from [the] date of judgment." (Defendant's Ex. 5).

[9] Thereafter, on March 2, 2015, the Caffreys' attorney re-sent his returned February letter to SIPG at its correct mailing address. After receiving notification of the complaint and the letter, SIPG's general counsel, Gibson, responded to the letter on March 9, 2015. In this response, Gibson notified the

---

[2] The meaning of the phrase "physical address" is not clear from the record.

Caffreys' attorney that SIPG had "rolled forward" its prepaid contracts such that the customers who had not received their prepaid gas could receive it at their former agreement rates until March 31, 2016. (Defendant's Ex. 6). According to Gibson, all that the Caffreys needed to do to receive their gallons was to "contact the office and place an order." (Defendant's Ex. 6). This was the first time the Caffreys had heard that they could still place orders at the price to which they had agreed in the Agreement.

[10] Also in his response, Gibson explained that the Caffreys had requested their delivery during a time when SIPG had needed to suspend deliveries of pre-purchased propane due to the national propane shortage. He claimed that this suspension had been consistent with paragraph five of the Agreement, which specified that SIPG could suspend deliveries if its product was not available.[3] In light of that provision, Gibson denied that SIPG had breached the Agreement and stated that SIPG would not pay for the Caffreys' attorney fees or court costs. Nevertheless, SIPG fulfilled its obligations under the Agreement in April 2015 when it delivered the Caffreys' propane without advanced notification, and even though the Caffreys had not yet requested it.

---

[3] Specifically, the Agreement provided that: "should corporation be prevented from fulfilling its obligations under this agreement by fire, riot, war, act of God, failure of transportation facilities, supply or pipeline allocation, delays at terminal loading facilities, inability to receive from its suppliers or carriers the propane secured pursuant to this agreement for customer, or any cause beyond reasonable control of corporation, then corporation's obligations thereunder shall be suspended while such condition exists. . . . (Plaintiffs' Ex. A).

On May 13, 2015, the small claims court held a trial on the Caffreys' complaint. Because SIPG had by then performed under the Agreement, the Caffreys sought only a recovery of their attorney fees at trial. Towards that end, they testified to the steps they had taken to contact SIPG and introduced, without objection, records of their attorney's invoices. Gibson testified that SIPG's suspension of natural gas deliveries had lasted for a two-week period in late January and early February 2014. He admitted that, to his knowledge, no one in the company had given the Caffreys notice of the suspension of deliveries. However, he claimed that SIPG had not known that the Caffreys had an issue with their contract before it had received their complaint.

At the conclusion of the trial, the small claims court took the matter under advisement. On May 20, 2015, it issued an order awarding the Caffreys attorney fees in the amount of $756.00. The court reasoned that SIPG "had clear liability under the facts of the case and thus any response to the claim other than an admission of liability was an unreasonable, or groundless[,] defense litigated in bad faith." (App. 5). It concluded that SIPG had "settled" in its March 2015 letter by agreeing to perform the contract under its original terms. (App. 6). The trial court estimated that the Caffreys should have received this letter by March 12, 2015. (App. 6). As a result, the trial court determined that an award of the attorney fees the Caffreys had accrued up to March 12, 2015 when SIPG "settled"—which amounted to $756.00—was reasonable. SIPG now appeals.

# Decision

[13] On appeal, SIPG argues that the trial court erred when it allowed the Caffreys to recover a portion of their attorney fees. As stated above, the trial court awarded the attorney fees based on its conclusion that SIPG's defense to its liability was unreasonable, groundless, or in bad faith. SIPG challenges this conclusion by asserting that: (1) its defense that it was not required to pay the Caffreys' attorney fees under the Agreement was worthy of litigation; and (2) it did not act with "obdurate, vindictive[,] or untruthful behavior" because it delivered the propane "[w]ithin [thirty] days of learning about the problem." (SIPG's Br. 12).

[14] First, we must note that our review of an award of attorney fees generally involves three steps: (1) a review of the findings of fact under the clearly erroneous standard, (2) a review of the legal conclusions de novo, and (3) a review of the trial court's award under an abuse of discretion standard. *Gillock v. City of New Castle*, 999 N.E.2d 1043, 1045 (Ind. Ct. App. 2013). Where, as here, the trial court did not enter findings of fact, the first step is unnecessary. *Id*. at 1046. As for step two, "'we look to the basis of the prevailing party's [attorney fee request] and view the court's order as an implicit legal conclusion consistent with the main thrust of the [request]—that the claim or defense at issue was frivolous, unreasonable, groundless, or litigated in bad faith.'" *Id*. (quoting *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 461 (Ind. 2012)).

Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied.* The parties here acknowledge that, although the Agreement authorized SIPG to recover attorney fees in the event it had to enforce the contract, the Agreement did not likewise authorize the Caffreys to recover attorney fees. However, the trial court awarded the Caffreys attorney fees under INDIANA CODE § 34-52-1-1, which allows "'the award of attorney fees for litigating in bad faith or for pursuing frivolous, unreasonable, or groundless claims.'" *Id.* (quoting *Davidson v. Boone Cnty.*, 745 N.E.2d 895, 899 (Ind. Ct. App. 2001)). Specifically, the statute provides that:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable or groundless; or
>
> (3) litigated the action in bad faith.

I.C. § 34-52-1-1(b).

A claim or defense is unreasonable under INDIANA CODE § 34-52-1-1 if, based on the totality of the circumstances, including the law and facts known at the time of filing, no reasonable attorney would consider that the claim or defense

was worthy of litigation or justified. *Smyth*, 901 N.E.2d at 33. A claim or defense is groundless if no facts exist that support the legal claim relied on and presented by the party. *Id.* However, a claim or defense is not groundless merely because the party loses on the merits. *Id.* As for determining whether a litigant has litigated in bad faith,

> "[T]he absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."

*Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990) (quoting *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*).

[17] Turning to SIPG's first argument, that the issue of whether it was liable for attorney fees was worthy of litigation, we note that the trial court did not order SIPG to pay the attorney fees the Caffreys accrued litigating the issue of attorney fees. Instead, the trial court allowed the Caffreys to recover the portion of attorney fees they had accrued up until the point when SIPG "settled" the issue of liability by agreeing to perform under the Agreement. Accordingly, it is clear that the trial court's award was based on SIPG's continued unreasonable, groundless, and/or bad faith defense that it was not liable under the contract due to the national propane shortage, not its defense that it was not liable for attorney fees under the Agreement.

[18]     Next, SIPG argues that its defense that it could not perform was not unreasonable, groundless, or in bad faith because it performed under the Agreement within thirty days of learning in March 2015 that the Caffreys had not received the prepaid propane they had requested. However, we find this argument disingenuous. The Caffreys initially requested delivery of their prepaid propane during the third week of January 2014, and SIPG failed to deliver the propane at that time based on its defense that the national propane shortage excused its lack of performance. SIPG learned—or should have learned—at that time that it had failed to send the Caffreys their prepaid propane. Subsequently, Leola again called SIPG but did not receive a response. The AG also sent SIPG a CID, which placed SIPG on notice that multiple customers had not received their prepaid propane as requested and had complained to the AG. Still, SIPG did not attempt to identify which of its customers had requested but not received their prepaid propane; nor did SIPG attempt to fulfill its prepaid contracts.

[19]     In total, SIPG did not perform under the Agreement for fourteen months. During this time, it never made any attempt to notify the Caffreys that the national propane shortage—which had suspended SIPG's services for only two weeks in January and February 2014—was over and that SIPG was again able to perform under its prepaid contracts. SIPG's failure to perform or to notify the Caffreys that it was able to perform under the Agreement had the effect of perpetuating its defense that it was excused from performance by the propane shortage. Moreover, we note that while SIPG may or may not have been

excused from performance under the Agreement initially due to the national propane shortage, paragraph five of the Agreement only allows suspended performance "while such condition exists. . . ." (Plaintiff's Ex. A). Over twelve months passed after the propane shortage ended before SIPG fulfilled its responsibilities under the Agreement. We are not convinced that this delay and SIPG's continuance of its defense that it was excused from performance for such an extended period was not unreasonable, groundless, or in bad faith. Accordingly, we conclude that the trial court did not err in awarding the Caffreys a portion of their attorney fees.

[20] Affirmed.

Baker, J., and Bradford, J., concur.